LORI J. GUALCO (Bar No. 95232)
GUALCO LAW
400 Capitol Mall, Eleventh Floor
Sacramento, CA 95814
Tel: (916) 930-0700
Fax: (916) 930-0705
Email: ljgualco@gualcolaw.com

JAN A. GREBEN (Bar No. 103464)
CHRISTINE M. MONROE (Bar No. 304573)
GREBEN & ASSOCIATES
125 E. De La Guerra Street, Suite 203
Santa Barbara, CA 93101
Tel: (805) 963-9090
Fax: (805) 963-9098
Email: jan@grebenlaw.com
Email: christine@grebenlaw.com

Attorneys for Plaintiff
MISSION LINEN SUPPLY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

MISSION LINEN SUPPLY, a California Corporation,

Plaintiff,

v.

CITY OF VISALIA, and Does 1-20, inclusive,

Defendant.

Case No. 1:15-cv-00672-AWI-EPG

**MISSION LINEN SUPPLY'S TRIAL BRIEF**

Date Complaint Filed: May 1, 2015

Trial Date: May 23, 2017

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

A. Mission Linen's Property Ownership and Operation ..... 1

B. The City Sewer System Ownership and Operation ..... 3

C. Hazardous Substances and Contamination Plume at Issue ..... 4

D. Regulatory Agency Oversight ..... 4

E. Allocation of Costs ..... 6

III. A SUMMARY OF POINTS OF LAW, INCLUDING REASONABLY ANTICIPATED DISPUTES CONCERNING ADMISSIBILITY OF EVIDENCE, LEGAL ARGUMENTS, AND CITATIONS OF AUTHORITY IN SUPPORT THEREOF ..... 6

A. The City is a Responsible Party Under CERCLA §§ 107 and 113 ..... 6

B. Mission Linen is Entitled to Declaratory Judgment Establishing the City's Liability for Future Response Costs ..... 10

C. The City is Liable for Continuing Private Nuisance and Nuisance Per Se ..... 10

D. The City is Liable for Continuing Public Nuisance and Public Nuisance Per Se 11

E. The City is Liable for a Dangerous Condition of Public Property ..... 12

F. Mission Linen Has Incurred Costs For Which it is Entitled to Reimbursement by the City Under Equitable Indemnity Principles ..... 13

IV. CONCLUSION ..... 14

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

## TABLE OF AUTHORITIES

**Cases**

*Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188 (E.D. Cal. 2009) ...........................7, 8, 9

*Alvarez v. State,* 79 Cal. App. 4th 720 (2000) ..................................................................... 13

*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal. 3d 578.................................... 14

*Ameripride Services Inc. v. Texas Eastern Overseas Inc.*, 782 F. 3d 474 (9th Cir. 2015) ............ 8

*AmeriPride,* 2012 U.S. Dist. LEXIS 47936 (E.D. Cal. Apr. 4, 2012)....................................... 8

*Asarco LLC v. Shore Terminals LLC,* 2011 U.S. Dist. LEXIS 72859 (N.D. Cal. July 7, 2011).... 8

*B.F. Goodrich v. Betkoski*, 99 F. 3d 505, 526 (2nd Cir. 1996), ................................................. 7

*Boeing Co. v. Cascade Corp*., 207 F. 3d 1177 (9th Cir. Or. 2000) .......................................... 8

*Boeing Co. v. N.W. Steel Rolling Mills, Inc*., 2004 U.S. App. LEXIS 5116 (9th Cir. 2004); ........ 8

*Bonanno v. Central Contra Costa Transit Authority,* 30 Cal. 4th 139 (2003) .......................... 13

*Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009)........................ 8

*Cadillac Fairview v. Dow Chem. Co*., 840 F. 2d 691 (9th Cir. Cal. 1988)................................ 8

*California Dept. of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069 (E.D. Cal. 2005)..........................................................................................................11, 12

*Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F. 3d 863, 872 (9th Cir. 2001)..................... 7

*Carson Harbor Village, Ltd. V. Unocal Corp.*, 287 F. Supp. 2d 1118, 1185-1186 (C.D. Cal. 2003) ............................................................................................................... 8

*Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1080 (C.D. Cal. 2003) ..............................................................................................7, 8 9

*Central Maine Power Co v. F.J. O'Connor Co.*, 838 F. Supp. 641, 646 (D. ME 1993) .............. 8

*Citrus v. State*, 1998 Cal LEXIS 1074 (1998) ........................................................................ 13

*City of Colton v. Am. Promotional Events, Inc.-West*, 614 F. 3d 998 (9th Cir. 2010)................ 10

*Cole v. Town of Los Gatos*, 205 Cal. App. 4th 749, 757–758 (2012) ..................................... 13

*Coppola v. Smith*, 935 F. Supp. 2d 993, 1018-1019 (E.D. Cal. 2013) ................................10, 11

*Dole Citrus v. State of California*, 60 Cal. App. 4th 486 (1997)............................................. 13

*DTSC v. Alco Pacific,* 217 F. Supp. 2d 1028 (2002) ............................................................. 9

*Emeryville Redevelopment Agency v. Eltex Inv. Corp.,* 2004 U.S. Dist. LEXIS 21452, at *17 (N.D. Cal. Oct. 19, 2004, No. C 04-02737 WHA) ......................................................... 11

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

*Hayes v. State of California,* 11 Cal. 3d 469 (1974) .......................................................... 13

*Key Tronic Corporation v. United States*, 511 U.S. 809 (1994) .............................................. 9

*Lewis v. Russell*, 2009 U.S. Dist. LEXIS 41539 (E.D. Cal. May 7, 2009) ................................ 8

*Lincoln Properties v. Higgins*, 823 F. Supp. 1528 (E.D. Cal. 1992) ................................7, 8, 9

*Mamola v. State of California ex rel. Dept. of Transportation,* 94 Cal. App. 3d 781 (1979)...... 13

*Mangini v. Aerojet General Corp. (Mangini I)*, 230 Cal. App. 3d 1125 (1991)..................11, 12

*Mangini v. Aerojet General Corp. (Mangini II)*, 12 Cal. 4th 1087 (1996) ..........................11, 12

*Newhall Land & Farming Co. v. Superior Court*, 19 Cal. App. 4th 334, 341 (1993) ................ 12

*PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F. 3d 161 (4th Cir. 2013)...................... 8

*Rev 973 LLC v. Mouren-Laurens*, 2009 U.S. Dist. LEXIS 38462, 2009 WL 1096278, *9 (C.D. Cal. Apr. 22, 2009) ......................................................................................................... 11

*Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal. 3d 322 ...................................................... 14

*State of Calif. On Behalf of Calif. Dept. of Toxic Substance Control v. Campbell*, 138 F. 3d 772 (9th Cir. 1998) ............................................................................................................. 12

*Stevens Creek Assoc. v. Barclays Bank of Cal*, 915 F.2d 1355, 1358 (1990) ............................ 7

*Tri-Dam v. Yick,* 2016 U.S. Dist. LEXIS 98894, at *9 (E.D. Cal. July 28, 2016, No. 1:11-CV-01301 AWI-SMS) .....................................................................................................11, 12

*United States v. 175 Inwood Assocs. LLP*, 330 F. Supp. 2d 213, 330 (E.D. N.Y. 2004) ............. 9

*United States v. Hunter*, 70 F. Supp. 2d 1100, 1107 (C.D. Cal. 1999) ..................................... 8

*United States v. Kramer*, 644 F. Supp. 2d 479, 494 (D.N.J. 2008) .......................................... 8

*United States v. Monsanto Co.*, 858 F. 2d 160, 173 (4th Cir. 1988)......................................... 8

*United States v. Stringfellow*, 661 F. Supp. 1053, 1061 (C.D. Cal. 1987)................................. 9

*United States. Demos v. City of Indianapolis*, 302 F. 3d 698, 706 (2002)................................. 7

*Walnut Creek Manor, LLC v. Mayhew Center, LLC*, 622 F. Supp. 2d 918, 933 (N.D. Cal. 2009) ........................................................................................................................... 12

*Wells Fargo Bank, supra*, 2011 WL 97649, at *11 (N.D. Cal. 2011)..................................... 12

*Westfarm Assocs. Ltd. Pshp. v. Washington Suburban Sanitary Comm'n*, 66 F. 3d 669 (4th Cir. Md. 1995)................................................................................................................. 7

*Young v. United States*, 394 F.3d 858, 863-864 (10th Cir. 2005) ............................................. 7

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

**Statutes**

28 U.S.C. § 2201(a) ... 10
42 U.S.C. § 9601 ... 8
42 U.S.C. §§ 9601, et seq. ... 7, 8, 10
42 U.S.C. § 9601(9) ... 7
42 U.S.C. § 9601(14) ... 7
42 U.S.C. § 9601 (22) ... 7
42 U.S.C. § 9607 ... 7
42 U.S.C. § 9607(a) ... 7, 8
42 U.S.C. § 9607(b) ... 9
42 U.S.C. § 9607 (b)(3) ... 9
42 U.S.C. § 9613(g)(2) ... 10

California Civil Code § 3479 ... 10, 12
California Civil Code § 3480 ... 11

California Health & Safety Code §§ 5411, 5411.5, and 117555 ... 12

California Water Code § 13050(m) ... 11, 12
California Water Code § 13304 ... 12
California Water Code § 13350 ... 12
California Water Code § 13387 ... 12

Government Code §§ 830, et seq. ... 11, 12, 13, 14
Government Code § 830(a) ... 13
Government Code Section 830.2 ... 13
Government Code § 830.4-831.8 ... 13
Government Code § 835 ... 13
Government Code § 835.4 ... 13
Government Code §§ 905, 910, and 911 ... 11, 12, 13, 14

**Other Authorities**

40 C.F.R. § 403 ... 7
40 C.F.R. §257 ... 7
40 C.F.R. § 261.31 ... 7
40 C.F.R. § 300, et seq ... 8

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

CACI 2020 .......... 12
CACI 2021 .......... 10
CACI 3800 .......... 14
CERCLA §§ 107 and 113 .......... 6
Restatement (Second) of Torts §§ 838-839 .......... 10
USEPA .......... 7

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

## I. INTRODUCTION

This litigation stems from environmental contamination at and near the real property located at 520 East Mineral King Avenue in Visalia, California ("Mission Linen Property") owned by Plaintiff Mission Linen Supply ("Mission Linen") since 1978. Mission Linen initiated this lawsuit against the City of Visalia ("City") based on its contribution to the contamination through the City's ownership, operation, maintenance, supervision and/or control of the City's storm and sanitary sewer system (hereinafter collectively "Subject Sewers") connecting to and servicing the Mission Linen Property and surrounding areas. Mission Linen's claims arise from the February 3, 2010 Imminent and Substantial Endangerment Order, I&SE 09/10-012 ("Mission Linen ISE Order") by the Department of Toxic Substances Control ("DTSC") against Mission Linen to investigate, delineate and remediate the environmental contamination at and near the Mission Linen Property.

## II. STATEMENT OF FACTS

The relevant facts are summarized below, many of which have been stipulated to by the parties, and are now a part of the Court's March 31, 2017 Pretrial Order ("PTO"), Document 44.

### A. Mission Linen's Property Ownership and Operation

Mission Linen has owned the Mission Linen Property at all times relevant since 1978. It is located on the northwest corner of East Mineral King Avenue and South Tipton Street. (PTO 2:10-12.) The Mission Linen facility is an operating industrial laundry facility. The closest residential neighborhood is located approximately 500 feet south of the Property, across California State Highway 198. (PTO 2:16-18.)

The Mission Linen facility is situated on three parcels totaling approximately 1.5 acres (Assessor Parcel Number [APN] 094-221-006-000 (~0.24 acre), 094-221-008-000 (~0.6 acre), 094-221-014-000 (~0.6 acre)) in a commercial/industrial area. (PTO 2:13-15.) The Mission Linen facility is situated on these three parcels as follows:

- APN 094-221-006-000 (~0.24 acre) is an unpaved area that serves as an employee parking lot for Mission Linen. (PTO 2:22-23.)

///

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

- APN 094-221-008-000 (~0.6 acre) has two buildings. The larger building ("Laundry Building") houses the main laundry operations, while the smaller building west of the Laundry Building is used as a storage warehouse ("Warehouse Building"). (PTO 2:19-21.)
- APN 094-221-014-000 (~0.6 acre) has three storage buildings. (PTO 2:22.)

The Laundry Building has been used for laundry operations since approximately 1937. Visalia Laundry and Dry Cleaning operated in the Laundry Building from approximately 1937 to 1971. (PTO 2:24-26.) Star Laundry and Dry Cleaning owned two of the three parcels (APNs 094-221-008-000 and 094-221-014-000) and conducted dry cleaning operations in the Warehouse Building from 1971 to 1978. (PTO 2:27-28.) Mission Linen acquired APN 094-221-008-000 and APN 094-221-014-000 in 1978 and APN 094-221-006-000 in 2003. (PTO 3:1-2.)

The available information indicates that dry cleaning operations conducted by Star Laundry and Dry Cleaning and by Mission Linen were performed in the northern half of the Warehouse Building. (PTO 3:3-5.) Mission Linen discontinued dry cleaning operations and the handling and storage of PCE at the Property in 1983. Perchloroethylene ("PCE") was used at the facility only for dry cleaning operations. (PTO 3:6-7.)

The dry cleaning machines were scrapped and removed from the Mission Linen Property when the dry cleaning stopped in 1983. (PTO 3:8-9.) The PCE utilized by Mission Linen was stored in a 55-gallon drum in the Warehouse Building from 1978 – 1983 and within the dry cleaning machine. The dry cleaning machine and the 55-gallon drum were located on the north end of the Warehouse Building. (PTO 3:10-12.)

Between approximately 1971 and 1978, separator water generated from the dry cleaning process was discharged into the building drain at the Mission Linen Property that discharged to the 8-inch vitrified clay pipe (VCP) sewer main beneath East Mineral King Avenue; from 1979 to 1983 separator water generated from the dry cleaning process was discharged to the building drain at the Mission Linen Property that discharged to the 21-inch VCP sewer beneath East Mineral King Avenue. (PTO 3:13-18.)

///

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

**B. The City Sewer System Ownership and Operation**

The City of Visalia is, and has been the owner and operator of the Subject Sewers at all times relevant. There have been blockages and surcharge events that have caused accidental releases from the City's Subject Sewers. (PTO 3:20-23.)

In addition to the above stipulated facts, the Subject Sewers in the vicinity of the Mission Linen Property are as follows:

- South Tipton Street: 12-inch diameter vitrified clay pipe storm sewer (conveys flow north from East Mineral King Avenue toward Main Street); 6-inch diameter vitrified clay pipe sanitary sewer (conveys flow south along South Tipton Street from near Acequia Avenue to East Mineral King Avenue 8-inch VCP sewer).
- East Mineral King Avenue: 8-inch diameter vitrified clay pipe sanitary sewer (conveys flow west from South Tipton Street to Santa Fe Avenue); 10-inch vitrified clay pipe sanitary sewer (conveys from Santa Fe Avenue west); 21-inch vitrified clay pipe sanitary sewer (conveys flow west from South Tipton Avenue to South Santa Fe Avenue); 8-inch diameter vitrified clay pipe storm sewer (flows east from Santa Fe to Tipton Street).
- South Santa Fe Avenue: 18-inch vitrified clay pipe sanitary sewer (conveys flow north from East Mineral King to sewer flowing beneath Willow Street).

Mission Linen's expert, Peter Krasnoff, has concluded that the City's Subject Sewers failed shortly after installation, with sewers being constructed and installed in the late-1920s, late-1930s and during the late-1970s. The failures occurred prior to and continued to fail during dry cleaning operations in 1971 to 1983 – the timeframe when the wastewater, which contained the hazardous substance at issue, perchloroethylene ("PCE"), was discharged from the dry cleaning operations into the sewers. PCE has been and continues to be detected in the City's sewers through at least 2009. In fact, sewer videos showing the defects and testimony that the Subject Sewers leak has been offered by the City's own expert, Nicole Sweetland.

Defects in the City's Subject Sewers have allowed and continue to allow releases. Observations during inspections of the Subject Sewers confirmed that they have failed structurally. This conclusion is supported by the pinpointing of exact locations of observed defects. Sewer defects, including low spots/sags would have developed shortly after construction. In addition, sags developed due to poor alignment during installation because problems with the sewer alignment reflect initial construction and installation defects. All of this points to the

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

City's failure to properly install and maintain the Subject Sewers thereby allowing past releases as well as the continued release of PCE from the Subject Sewers.

**C. Hazardous Substances and Contamination Plume at Issue**

PCE is a solvent that has been used in dry cleaning operations. PCE has been detected in the indoor air, soil, soil gas and groundwater at and around the Mission Linen Property and near Subject Sewers ("Contamination Plume"). The Contamination Plume is abatable. The Contamination Plume poses an imminent and substantial endangerment as set forth in the determinations authored by the California Environmental Protection Agency's ("CalEPA") and DTSC. (PTO 3:25-4:5.)

**D. Regulatory Agency Oversight**

On September 8, 2006, DTSC issued an Imminent and Substantial Endangerment Order Docket no. IS&E 06/07-006 for the properties that overlie the central portion of the City of Visalia, stating that a PCE groundwater plume underlies parts of Visalia. (PTO 4:7-9.)

On February 3, 2010, DTSC issued the Mission Linen ISE Order. (PTO 4:10-11.) In response to the Mission Linen ISE Order, Mission Linen entered into a voluntary consent order with the DTSC. Mission Linen has funded the oversight costs of DTSC during the investigative process at the Mission Linen Property. Mission Linen has conducted investigative activities at and around the Mission Linen Property, and its consultants, Source Group Inc. ("SGI") and CGC, have taken the following actions in compliance with the requirements of the Mission Linen ISE Order:

- In April 2010, SGI submitted a work plan to DTSC for site characterization activities including: conducting a video survey of the building drain and sewer main, advancing membrane interface probes, drilling and installing groundwater monitoring wells, and collecting and analyzing indoor air samples, sub-slab soil vapor samples, soil samples, soil vapor samples, and groundwater samples. The results of the site characterization work are presented in a SGI November 2010 report for DTSC titled Onsite Remedial Investigation Report. (PTO 4:12-22.)

///

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

- In April 2011, SGI submitted a work plan to DTSC for additional subsurface characterization work in response to a February 2, 2011 DTSC letter requesting further characterization of subsurface conditions at and around the Mission Linen Property. The work plan included: performing an area well survey, collecting and analyzing indoor air samples, performing additional closed circuit television ("CCTV") inspections of sewer mains, collecting and analyzing onsite and offsite soil vapor samples, advancing one offsite upgradient boring for collection of soil and groundwater samples, drilling and constructing three additional downgradient groundwater monitoring wells, and collecting and analyzing groundwater samples. In May 2012, SGI reported the results of these further site characterization activities to DTSC. (PTO 4:22-5:5.)
- In June 2013, SGI submitted to DTSC the draft Source Area Remedial Action Plan. The Plan addressed primarily PCE in sewer line bedding material, soil, and shallow soil vapor (<50 feet deep) but not in groundwater. (PTO 5:6-8.)
- SGI prepared and submitted to DTSC, February 2014 and June 2014 work plans to further characterize soil vapor conditions at and around the Mission Linen Property. In September 2014, SGI submitted the Data Gap Soil Vapor Investigation Report that presented the results from these additional soil vapor investigation activities. (PTO 5:9-13.)
- In March 2016, SGI prepared a Groundwater Feasibility Study which presented an evaluation of the effectiveness, implementability, and cost of various technologies as a means to eliminate an ongoing release of hazardous substances from the Property. (PTO 5:14-17.)
- In July 2016, SGI prepared the Additional Site Investigation Work Plan to further characterize deep soil vapor conditions and the lateral and vertical extent of groundwater contamination. The results of the further characterization activities are presented in a SGI October 2016 report titled Groundwater and Soil Vapor Characterization Report. (PTO 5:18-22.)

///

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

- Periodic monitoring of soil vapor and/or groundwater was conducted from first quarter 2011 through fourth quarter 2016. (PTO 5:22-24.)

**E. <u>Allocation of Costs</u>**

Mission Linen's second expert, Keith O'Brien, concludes that allocation of costs for the Site as between Plaintiff and Defendant is 55% to the City and 45% to Mission Linen. His analysis is based on the City of Visalia being responsible for 38% of the past investigative and future response costs – e.g. the Soil Vapor Extraction ("SVE")/Air Sparge ("AS") remedy. Mr. O'Brien's allocation plan includes an allocation of 31% to Mission Linen for the for past investigative costs and future response costs, and another 31% as an orphan share to Star Laundry (not a party and no survivors located). Mr. O'Brien relies on specific vendor estimates and other cost estimates developed in spreadsheets in support of his opinions as to costs and estimated expenses for the past investigation and future response costs.

Mr. O'Brien has performed numerous investigations and implemented SVE system remedies and pilot studies under the oversight of various regulatory agencies, including the DTSC. In fact, Mr. O'Brien recently designed, permitted, and performed a SVE pilot study in the Visalia downtown area at Paragon Cleaners. Mr. O'Brien also addresses the public participation requirement of the National Contingency Plan ("NCP") that is not yet ripe, concluding that "Remedial action and public participation documents will be required by DTSC for this site cleanup project."

## III. A SUMMARY OF POINTS OF LAW, INCLUDING REASONABLY ANTICIPATED DISPUTES CONCERNING ADMISSIBILITY OF EVIDENCE, LEGAL ARGUMENTS, AND CITATIONS OF AUTHORITY IN SUPPORT THEREOF

**A. <u>The City is a Responsible Party Under CERCLA §§ 107 and 113</u>**

The prima facie case for a private right to relief under CERCLA requires: (1) the site on which the hazardous substances are contained is a "facility"; (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" has caused Plaintiffs to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

classes of persons subject to the liability provisions of 42 U.S.C. § 9607(a). *Stevens Creek Assoc. v. Barclays Bank of Cal*, 915 F. 2d 1355, 1358 (1990); 42 U.S.C. §§ 9601, et seq. Plaintiff need only prove its case by a preponderance of the evidence, not with scientific certainty. *B.F. Goodrich v. Betkoski*, 99 F. 3d 505, 526 (2nd Cir. 1996), overruled on other grounds. Lastly, (5) the City is limited to narrow defenses as set forth below.

1. The City's Subject Sewers are a "facility" within the meaning of CERCLA. 42 U.S.C. § 9601(9); *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188 (E.D. Cal. 2009); *Westfarm Assocs. Ltd. Pshp. v. Washington Suburban Sanitary Comm'n*, 66 F. 3d 669 (4th Cir. Md. 1995).
2. The City's Subject Sewers are a source of hazardous substance releases, and/or there are threatened releases of hazardous substances from the City's Subject Sewers within the meaning of CERCLA. "The term 'release' means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment…" 42 U.S.C. § 9601 (22). It is undisputed that the City's Subject Sewers have defects and leak, thus falling within the meaning of a CERCLA release. *Lincoln Properties v. Higgins*, 823 F. Supp. 1528 (E.D. Cal. 1992); 40 C.F.R. 257, Federal Register, 44:53438-53468; 40 C.F.R. § 403; USEPA; *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188 (E.D. Cal. 2009); *Westfarm Assocs. Ltd. Pshp. v. Washington Suburban Sanitary Comm'n*, 66 F. 3d 669 (4th Cir. Md. 1995); *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053 (C.D. Cal. 2003). Perchloroethylene is a hazardous substance within the meaning of CERCLA. 42 U.S.C. § 9601(14); 40 CFR § 261.31. The Court may take judicial notice – *United States. Demos v. City of Indianapolis*, 302 F. 3d 698, 706 (2002).
3. Mission Linen has incurred necessary and NCP compliant response costs within the meaning of CERCLA. 42 U.S.C. § 9607.
    a. Mission Linen has incurred necessary costs in response to the DTSC. *Young v. United States*, 394 F. 3d 858 (10th Cir. 2005); *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F. 3d 863, 872 (9th Cir. 2001).

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

b. The causation element is not based in "traditional tort notions of causation" and the Court should instead apply a "relaxed" standard. *Carson Harbor Village, Ltd. V. Unocal Corp.*, 287 F. Supp. 2d 1118, 1185-1186 (C.D. Cal. 2003); *Castaic Lake Water Agency v. Whittaker Corp*., 272 F. Supp. 2d 1053 (C.D. Cal. 2003); *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188 (E.D. Cal. 2009).

c. Whether a response action is consistent with the criteria set forth in the contingency plan is a factual one to be determined at the damages stage of a section 107(a) action. *Cadillac Fairview v. Dow Chem. Co*., 840 F. 2d 691 (9th Cir. Cal. 1988); 40 CFR § 300, et seq.; 42 U.S.C. § 9601, et seq.

d. The City is responsible for at least a share of the costs incurred by Mission Linen. Mission Linen only, has prepared a cost allocation/apportionment analysis, and "expert testimony might illuminate the court's consideration of equitable factors." *United States v. Kramer*, 644 F. Supp. 2d 479, 494 (D.N.J. 2008); *Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009); *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F. 3d 161 (4th Cir. 2013); *United States v. Monsanto Co.*, 858 F. 2d 160, 173 (4th Cir. 1988); *Boeing Co. v. Cascade Corp*., 207 F. 3d 1177 (9th Cir. Or. 2000); *AmeriPride,* 2012 U.S. Dist. LEXIS 47936 (E.D. Cal. Apr. 4, 2012); *Central Maine Power Co v. F.J. O'Connor Co.*, 838 F. Supp. 641, 646 (D. ME 1993); *Ameripride Services Inc. v. Texas Eastern Overseas Inc.*, 782 F. 3d 474 (9th Cir. 2015); *Boeing Co. v. N.W. Steel Rolling Mills, Inc*., 2004 U.S. App. LEXIS 5116 (9th Cir. 2004); *Asarco LLC v. Shore Terminals LLC,* 2011 U.S. Dist. LEXIS 72859 (N.D. Cal. July 7, 2011); *United States v. Hunter*, 70 F. Supp. 2d 1100, 1107 (C.D. Cal. 1999); *Lewis v. Russell*, 2009 U.S. Dist. LEXIS 41539 (E.D. Cal. May 7, 2009).

4. The City is a "covered person" within the meaning of CERCLA. 42 U.S.C. § 9607(a); see also 42 U.S.C. § 9601; *Lincoln Properties v. Higgins*, 823 F. Supp. 1528 (E.D. Cal. 1992); *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188 (E.D. Cal. 2009).

///

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

5. The City's defenses to CERCLA are limited to those narrow defenses enumerated under CERCLA, and the City's only available defense to CERCLA is the third party defense. *Key Tronic Corporation v. United States*, 511 U.S. 809 (1994); *DTSC v. Alco Pacific,* 217 F. Supp. 2d 1028 (2002); *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1080 (C.D. Cal. 2003).

    a. The City's CERCLA affirmative defenses for act of god, act of war, and innocent landowner have been dismissed without leave to amend. [See Document 31.]

    b. The City bears the burden of proof, and cannot establish its third party defense set forth under CERCLA. 42 U.S.C. § 9607(b).

    c. CERCLA Third Party Defense: "An act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions…" 42 U.S.C. § 9607 (b)(3); 42 U.S.C. § 9607(b).

    d. The City must prove that it did not contribute to the contamination and that other sources were the sole cause. The fact that another PRP is a cause of the contamination, or violated laws, "does not demonstrate that they were the sole cause." *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188 (E.D. Cal. 2009); *Lincoln Properties v. Higgins*, 823 F. Supp. 1528 (E.D. Cal. 1992); *United States v. 175 Inwood Assocs. LLP*, 330 F. Supp. 2d 213 (E.D. N.Y. 2004); *United States v. Stringfellow*, 661 F. Supp. 1053, 1061 (C.D. Cal. 1987).

///

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

**B. Mission Linen is Entitled to Declaratory Judgment Establishing the City's Liability for Future Response Costs**

Mission Linen is entitled to declaratory judgment establishing the City's liability for future response costs. 42 U.S.C. § 9613(g)(2); 42 U.S.C. §§ 9601, et seq.; *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F. 3d 998 (9th Cir. 2010). The Court may also declare the rights and other legal relations of Mission Linen whether further relief is or could be sought against the City. "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

**C. The City is Liable for Continuing Private Nuisance and Nuisance Per Se**

A nuisance is "anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property ...." California Civil Code ("Cal. Civ. Code") § 3479. A defendant may be liable for a nuisance under one of three theories: (1) the defendant creates or assists in the creation of the nuisance; (2) the defendant unreasonably fails to abate a nuisance when he is in possession of land; or (3) the defendant has a right of possession in land and consents or unreasonably permits a third party to create a nuisance on the land. *Coppola v. Smith*, 935 F. Supp. 2d 993, 1018-1019 (E.D. Cal. 2013) – internal citations omitted; *Coppola v. Smith*, 935 F. Supp. 2d 993 (E.D. Cal. 2013) and citing cases and authority; Restatement (Second) of Torts §§ 838-839.

In addition to establishing that the City's conduct has created a nuisance under one of these theories, Mission Linen must also prove the following elements to prove its prima facie case for a nuisance: (1) Mission Linen owns, occupies, and/or controls the property; (2) the condition interfered with Mission Linen's use or enjoyment of the property; (3) Mission Linen did not consent to the City's conduct; (4) an ordinary person would be reasonably annoyed by the City's conduct; (5) Mission Linen has been harmed; (6) the City's conduct was a substantial factor in causing that harm; and (7) the seriousness of the harm outweighs the public benefit of the City's conduct. CACI 2021.

///

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

1. PCE releases to the environment constitute a nuisance that is a substantial and unreasonable interference. *California Dept. of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069 (E.D. Cal. 2005); *Mangini v. Aerojet General Corp. (Mangini I)*, 230 Cal. App. 3d 1125 (1991); *Mangini v. Aerojet General Corp. (Mangini II)*, 12 Cal. 4th 1087 (1996); California Water Code § 13050(m).
2. Notice was given to the City. Government Code §§ 905, 910, and 911.
3. The City cannot prove any equitable defenses; and the City cannot meet its burden to prove an immunity defense. Government Code §§ 830, et seq.
4. The City cannot establish its consent defense. *Tri-Dam v. Yick,* 2016 U.S. Dist. LEXIS 98894, at *9 (E.D. Cal. July 28, 2016, No. 1:11-CV-01301 AWI-SMS) citing *Rev 973 LLC v. Mouren-Laurens*, 2009 U.S. Dist. LEXIS 38462, 2009 WL 1096278, *9 (C.D. Cal. Apr. 22, 2009); *Emeryville Redevelopment Agency v. Eltex Inv. Corp.,* 2004 U.S. Dist. LEXIS 21452, at *17 (N.D. Cal. Oct. 19, 2004, No. C 04-02737 WHA).

**D. <u>The City is Liable for Continuing Public Nuisance and Public Nuisance Per Se</u>**

A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal. Cal. Civ. Code § 3480. A defendant may be liable for a nuisance under one of three theories: (1) the defendant creates or assists in the creation of the nuisance; (2) the defendant unreasonably fails to abate a nuisance when he is in possession of land; or (3) the defendant has a right of possession in land and consents or unreasonably permits a third party to create a nuisance on the land. *Coppola v. Smith*, 935 F. Supp. 2d 993, 1018-1019 (E.D. Cal. 2013) – internal citations omitted.

In addition to establishing that the City's conduct created a nuisance under one of these theories, Mission Linen must also prove the following elements to prove its prima facie case for a public nuisance: (1) the condition affected a substantial number of people at the same time; (2) an ordinary person would be reasonably annoyed or disturbed by the condition; (3) the seriousness of the harm outweighs the social utility of the City's conduct; (4) Mission Linen did not consent to the City's conduct; (5) Mission Linen suffered harm that was different from the

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

type of harm suffered by the general public; and (6) the City's conduct was a substantial factor in causing the harm. CACI 2020.

1. The Hazardous Substance contamination constitutes a public nuisance, and where in violation of the California Water Code, it is a public nuisance per se. *Newhall Land & Farming Co. v. Superior Court*, 19 Cal. App. 4th 334, 341 (1993). PCE releases to the environment constitute a nuisance that is a substantial and unreasonable interference. See *Walnut Creek Manor, LLC v. Mayhew Center, LLC*, 622 F. Supp. 2d 918, 933 (N.D. Cal. 2009); *Wells Fargo Bank, supra*, 2011 WL 97649, at *11 (N.D. Cal. 2011); *California Dept. of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069, 1081 (E.D. Cal. 2005); Cal. Civ. Code §§ 3479 et seq.; California Water Code §§ 13050(m), 13304, 13350, and 13387; California Health & Safety Code §§ 5411, 5411.5, and 117555.
2. Under California law, those responsible for polluting groundwater can be held liable for creating a public nuisance and for violating California's environmental laws. *State of Calif. On Behalf of Calif. Dept. of Toxic Substance Control v. Campbell*, 138 F. 3d 772 (9th Cir. 1998) applying California law; *Mangini I*, 230 Cal. App. 3d 1125 (1991); *Mangini II*, 12 Cal. 4th 1087 (1996).
3. Mission Linen gave proper notice. Government Code §§ 905, 910, and 911.
4. The City cannot prove any equitable defenses; and the City cannot meet its burden to prove an immunity defense. Government Code §§ 830, et seq.
5. The consent defense is inapplicable to public nuisance. *Tri-Dam v. Yick,* 2016 U.S. Dist. LEXIS 98894, at *9 (E.D. Cal. July 28, 2016, No. 1:11-CV-01301 AWI-SMS).

**E. <u>The City is Liable for a Dangerous Condition of Public Property</u>**

The prima facie case for the dangerous condition of public property cause of action consists of the following elements: (1) a dangerous condition of public property; (2) a foreseeable risk, arising from the dangerous condition, of the kind of injury the plaintiff suffered; (3) actionable conduct in connection with the condition, i.e., either negligence on the part of a public employee in creating it, or failure by the entity to correct it after notice of its existence and dangerousness; (4) a causal relationship between the dangerous condition and the plaintiff's

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

injuries; and (5) compensable damage sustained by the plaintiff. *Cole v. Town of Los Gatos*, 205 Cal. App. 4th 749, 757–758 (2012), internal citations and footnote omitted; Government Code §§ 830, et seq.

1. "Dangerous condition" means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used. Gov Code §830(a).
2. The City was in a position to protect against the dangerous condition. *Mamola v. State of California ex rel. Dept. of Transportation,* 94 Cal. App. 3d 781 (1979).
3. The existence of a dangerous condition is ordinarily a question of fact. *Bonanno v. Central Contra Costa Transit Authority,* 30 Cal. 4th 139 (2003).
4. Mission Linen gave proper notice. Government Code §§ 905, 910, and 911.
5. The City cannot meet its burden to prove an immunity defense. Design immunity is not perpetual and may be lost as a result of changed circumstances by evidence that the design, under changed physical conditions, has produced a dangerous condition. There are at least two predicates to loss of design immunity: (1) changed conditions and (2) notice. Government Code §§ 830, et seq., including but not limited to §§ 830.2, 830.4-831.8, 835, and 835.4; see also *Alvarez v. State,* 79 Cal. App. 4th 720 (2000); *Dole Citrus v. State of California*, 60 Cal. App. 4th 486 (1997) -- rev. den. *Citrus v. State*, 1998 Cal LEXIS 1074 (1998).
6. The City cannot establish a third party, sole cause, or other comparative fault defenses. See e.g., *Hayes v. State of California,* 11 Cal. 3d 469 (1974).

**F. <u>Mission Linen Has Incurred Costs For Which it is Entitled to Reimbursement by the City Under Equitable Indemnity Principles</u>**

A claim for equitable indemnification exists where Mission Linen has been required to pay or incurred liability above its share, that must be reimbursed by the City based on its share of responsibility. The prima facie case for equitable indemnity is (1) that the City was negligent and (2) that the City's conduct contributed as a substantial factor in causing Mission Linen's harm.

GUALCO LAW
400 Capitol Mall
Eleventh Floor
Sacramento, CA 95814

CACI 3800; *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal. 3d 578; *Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal. 3d 322.

1. The City cannot prove any equitable defenses; and the City cannot meet its burden to prove an immunity defense. Government Code §§ 830, et seq.
2. The City's causation/third party defenses fail as Mission Linen is not the sole, or superseding cause of any harm.
3. Mission Linen gave proper notice. Government Code §§ 905, 910, and 911.

## IV. CONCLUSION

The City is a responsible party for past investigative and future response costs under CERCLA. The City failed to adequately design, install, maintain, clean and repair the Subject Sewers contributing to releases of PCE and the response costs incurred by Mission Linen. The City should be held responsible for its allocation of response costs under CERCLA and damages under the related common law causes of action set forth in the Complaint.

Dated: April 24, 2017

Respectfully submitted,
GUALCO LAW

/s/ Lori J. Gualco

Lori J. Gualco
Attorney for Plaintiff MISSION LINEN SUPPLY

Dated: April 24, 2017

GREBEN & ASSOCIATES

/s/ Jan A. Greben

Jan A. Greben
Christine M. Monroe
Attorneys for Plaintiff MISSION LINEN SUPPLY