Leonard C. Herr, #081896
Ron Statler, #234177
Caren Curtiss, #311218
HERR PEDERSEN & BERGLUND LLP
Attorneys at Law
100 Willow Plaza, Suite 300
Visalia, California 93291
Telephone: (559) 636-0200

Thomas F. Vandenburg, #163446
Emil A. Macasinag, #256953
WOOD, SMITH, HENNING & BERMAN LLP
10960 Wilshire Boulevard, 18th Floor
Los Angeles, California 90024-3804
Phone: 310-481-7600 ♦ Fax: 310-481-7650

Attorneys for Defendant, CITY OF VISALIA

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| MISSION LINEN SUPPLY,<br><br>             Plaintiff,<br><br>      v.<br><br>CITY OF VISALIA and DOES 1-20,<br>inclusive,<br><br>             Defendants. | Case No.: 1:15-cv-00672-AWI-EPG<br><br>**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Date:         April 9, 2018<br>Time:         9:00 a.m.<br>Location:     Courtroom 2<br>Trial Date:   December 12, 2017<br><br>Assigned to Senior United States District Judge Anthony W. Ishii, For All Purposes |

///

///

///

///

///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1

## **TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ...........................................................................ii, iii

3    INTRODUCTION ............................................................................................1

4    I.    Allocation standards ...............................................................................2

5    II.   Factors........................................................................................................5

6          A. *East Bay Park* Factors 2, 3, & 4 [and an unnumbered factor]. ....................6

7          B. *East Bay Park* Factors 1, 5, 6, & 10. ...........................................................7

8          C. *East Bay Park* Factor 7 ...............................................................................10

9              1. Lack of Cooperation .............................................................................10

10             2. Causation of increased cleanup costs due to the allegation
               that City did not cooperate with government authorities ...........................14

11             3. Conclusion..........................................................................................14

12         D. *East Bay Park* Factors 9 & 11 ...................................................................15

13         E. *East Bay Park* Factor 8 ..............................................................................17

14    III.   PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW..................17

15    Proposed Conclusions of Law and their reasons ..................................................18

16

17    IV.    CONCLUSION...........................................................................................19

18    SUPPLEMENTAL [PROPOSED] FINDINGS OF FACT AND
      CONCLUSIONS OF LAW.......................................................................................21

19
      DEFENDANT CITY OF VISALIA'S [PROPOSED] FINDINGS OF FACT AND
20    CONCLUSIONS OF LAW.......................................................................................22

21    [PROPOSED] FINDINGS OF FACT .......................................................................23

22    [PROPOSED] CONCLUSIONS OF LAW.................................................................26

23

24

25

26

27

28

HERR PEDERSEN &
BERGLUND LLP
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-i-

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*3550 Stevens Creek Assoc. v. Barclays Bank of Cal.,*
 915 F.d 1355, 1362 (9th Cir. 1990) ....................................................................28

4

5

*Adobe Lumber Inc. v. Hellman,* 658 F.Supp.2d 1188 (2009) ...................17, 18, 27

6

*Boeing Co. v. Cascade Corp.* (D. Or. 1996) 920 F.Supp.
1121, 1132, *aff'd in part, remanded in part* (9th Cir. 2000)
207 F.3d 1177...............................................................................................2, 3, 5

7

8

*Browning–Ferris Indus., of Ill., Inc. v. Ter Maat,* 13 F.Supp.2d
756, 778 (N.D.Ill.1998), *rev'd in part on other grounds,* 195 F.3d
953 (7th Cir.1999) ..........................................................................................11

9

10

11

*Carson Harbor Village, Ltd. v. Unocal Corp.,* 270 F.3d 863
(9th Cir. 2001)..........................................................................................27, 28

12

13

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 594,
113 S.Ct. 2786, 125 L.Ed.2d. 469 (1993). ............................................................27

14

15

*Dir., Office of Workers' Compensation Programs, Dep't.
of Labor v. Greenwich Colleries,* 512 U.S. 267, 275,
114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). ............................................................26

16

17

18

*Environmental Transportation Systems, Inc. v. ENSCO, Inc.,*
969 F.2d 503, 509 (7th Cir.1992) .............................................................................2

19

20

*In re Exxon Valdez,* 270 F.3d 1215, 1232 (9th Cir. 2001)....................................26

21

*U.S. v. Rodriguez-Vega,* 797 F.3d 781, 790 (9th Cir. 2015) .....................................8

22

*United States v. Colorado and Eastern R.R.,* 50 F.3d 1530,
1536 (10th Cir.1995) ...............................................................................................2

23

24

*United States v. Davis,* 31 F.Supp. 2d 45, 63 (D. R.I. 1998) ...........................2, 3, 5

25

26

*Waste Management of Alameda County, Inc. v. East Bay
Regional Park District,*
135 F.Supp.2d 1071 (2001).......................................3, 4, 5, 11, 18, 19, 20, 27, 29

27

28

HERR PEDERSEN &
BERGLUND LLP
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-ii-

**Statutes**

40 C.F.R. § 300.700(c)(3)(i) ...................................................... 28

42 U.S.C. § 6903(3) ...................................................... 28

42 U.S.C. § 9601(9) ...................................................... 28

42 U.S.C. § 9601(22) ...................................................... 27, 28

42 U.S.C. § 9601(29) ...................................................... 28

42 U.S.C. § 9607(a) ...................................................... 27

42 U.S.C. § 9607(a)(1) ...................................................... 28

42 U.S.C. § 9607(a)(4)(B) ...................................................... 27, 28

42 U.S.C. § 9613(f) [or CERCLA Section 113] ...................................................... 2

42 U.S.C § 9613(f)(1) ...................................................... 28, 30

Cal. Health and Safety Code §§ 25358.1 & 25367 ...................................................... 12

HERR PEDERSEN &
BERGLUND LLP
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

1   **TO THE HONORABLE COURT, AND TO PLAINTIFF AND ITS COUNSEL OF**
2   **RECORD:**

3        To better assist the Court, this brief sets forth analysis and legal authority in
4   support for certain findings and conclusions, as written "closing argument,"
5   Defendant CITY OF VISALIA ("City"), along with its [Proposed] Findings of Fact and
6   Conclusions of Law, pursuant to the Court's orders.  *See Reporter's Transcript of*
7   *Bench Trial Proceedings ("Transcript")*, Vol. 4 at 557:25-558:3 (Dec. 15, 2017).

8                          **INTRODUCTION**

9        For years and years Mission Linen and its predecessor, for business and profit
10  purposes actively contaminated the environment.  The City's inaction in maintaining
11  its waste water sewers may have contributed.  The purpose of the trial in this case
12  was to determine allocation of responsibility for each party's fair share of costs for a
13  cleanup of chemical waste in the soils surrounding what is known in this matter as
14  the Mission Linen Site, or 520 E. Mineral King Ave., Visalia, California.  Boiled down
15  to its essence, Mission Linen ran a dry cleaning operation there from 1978-1983,
16  when the dry cleaning portion of that facility was shut down.  Mission Linen took
17  over the dry cleaning when they bought the place from Star Laundry, who ran a
18  similar operation from 1971 until 1978.  At that time, dry cleaners used a cleaning
19  agent called perchloroethylene, commonly known as PCE or Perc.  Mission Linen
20  and Star both rid themselves of excess PCE by disposing of it into sewer drains.  PCE
21  is a toxic chemical that has been found in soils around the Mission Linen site,
22  attributable to at least some degree to cracks and breaks in the sewer lines around
23  Mission Linen.

24        Mission Linen unabashedly asks that this Court saddle the City of Visalia
25  with 55% of the responsibility for cleaning up the chemicals Mission Linen and Star
26  deposited into the sewers.

27  ///
28  ///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-1-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

# I.

## Allocation standards

Generally, a party's share of liability is apportioned according to those equitable factors the court finds appropriate. 42 U.S.C. § 9613(f) [or CERCLA Section 113]. Section 113 does not require a court to consider a particular list of factors. *Environmental Transportation Systems, Inc. v. ENSCO, Inc.,* 969 F.2d 503, 509 (7th Cir.1992). Depending on the totality of circumstances, a court may consider many factors, a few factors, or it may find one factor determinative. *United States v. Colorado and Eastern R.R.,* 50 F.3d 1530, 1536 (10th Cir.1995) (citations omitted)." *Boeing Co. v. Cascade Corp.* (D. Or. 1996) 920 F.Supp. 1121, 1132, *aff'd in part, remanded in part* (9th Cir. 2000) 207 F.3d 1177.

Apportionment, or allocation, has been the subject of several cases, with several influential cases being published between 1996 and 2001.  The earliest of these is the *Boeing* case, *supra*, that posited what is known as the Gore Factors, named for then-Representative Al Gore, who suggested six factors to be added to the CERCLA statutes.  While Congress declined, the *Boeing* Court recognized them as factors to be considered when appropriate.  *Boeing Co. v. Cascade Corp.*, 920 F.Supp. at 1132.  On review, the Ninth Circuit noted the District Court's use of the Gore Factors without criticism and appeared to endorse their use so long as they are used with the District Court's sound discretion, saying that in light of the factors' history, "[t]he trial court is therefore not limited to the Gore factors." *Boeing v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000).

A couple of years later, Judge Torres out of Rhode Island posited a list of his own with four factors that came to bear his name, similar but not identical to the Gore Factors, to be used consistent with the Court's considerable discretion in determining which are appropriate: "allocation is a highly fact-intensive process that depends upon the particular circumstances of each case." *United States v. Davis*, 31 F. Supp. 2d 45, 63 (D. R.I. 1998).

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-2-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1    Those cases and their respective lists have been cited in this case before;

2  another case, published shortly after *Davis*, appears to combine them well.  Coming

3  from our neighbors to the north, Judge Henderson from California's Northern

4  District appears to have created a serviceable list of factors to guide a discussion of

5  CERCLA allocation.  That case involved a different contaminant—leachate from a

6  landfill—but it also involved a public entity under several other circumstances

7  similar to those in this case. *Waste Management of Alameda County, Inc. v. East Bay*

8  *Regional Park District*, 135 F.Supp.2d 1071 (2001) ["*East Bay Park*"].  In *East Bay*

9  *Park*, a park district gained title to valuable sea-side land when it was donated by

10  the trash company that used it as a landfill for decades.  The landfill was covered

11  and capped before the title transfer and the state Water Board declared that the

12  landfill's closure requirements had been achieved, but later studies showed

13  problems.  The landfill began to leak leachate into the surrounding soils, and the

14  trash company's successor, *East Bay Park*, which purchased the company that

15  operated the landfill and assumed its obligations, sued the District for contribution

16  based in part on negligent maintenance.  *Id.* at *passim*.  The court noted several

17  factors, specifically identifying the *Boeing* case as a source:

18    (1) The parties' relative fault or culpability;

19    (2) The ability of the parties to demonstrate that their contribution to a

20       discharge, release or disposal of a hazardous waste can be distinguished;

21    (3) The amount of hazardous waste involved;

22    (4) The degree of toxicity;

23    (5) The degree of involvement of the parties in the generation, transportation,

24       treatment, storage or disposal of the hazardous waste;

25    (6) The degree of care exercised by the parties with respect to the hazardous

26       waste;

27    (7) The degree of cooperation by the parties with government agencies to

28       prevent harm to the public health or the environment;

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-3-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1      (8) Financial resources or economic status;

2      (9) Economic benefits received by the parties from contaminating activities or

3           remediation;

4      (10) Knowledge and/or acquiescence of the parties in the contaminating

5           activities; and,

6      (11) Contracts between the parties.

7  (*Id.* at 1090.)  These will be called the *East Bay Park* factors.

8        City recognizes there are differences between that case and this one.  Notably,

9  in *East Bay Park*, the source of the contamination was the old trash company only;

10  here, the new and old dry cleaners, Mission Linen and Star Laundry, were both

11  responsible for depositing PCE into the sewers.  Another difference, the public entity

12  in *East Bay Park* owned the facility from which the contamination leached, but not

13  until after the contaminant had been left there; here, while City has never owned the

14  Mission Linen site that served as the source of the contaminant, it always owned the

15  facility that is alleged to have transported it [the waste water system].

16        Other similarities between this case and *East Bay Park* loom large

17  nevertheless.  (Perhaps it is time for the "Ishii Factors.")

18        Just as in *East Bay Park*, Mission Linen's expert testified that City was too

19  slow in getting documents to DTSC and that, once delivered, some documents were

20  unnecessary to that production.  Even assuming that opinion is spot on, there is no

21  evidence showing that City was made aware that the document request was

22  important to a time-sensitive determination; the time-sensitivity appears to have

23  been a randomly-selected deadline.  Indeed, there is no evidence that the request

24  was time sensitive at all: there is no evidence that DTSC has even inquired as to the

25  status of this yet-to-be-determined cleanup process.  There is no evidence that this

26  matter would have proceeded differently had City produced every document DTSC

27  requested and no other.

28  ///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-4-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1    In this case, another factor appears to arise, and that is a so-called "orphan

2    share." The orphan share is the percentage contribution by [and allocation to] non-

3    party Star Laundry, and who should be picking up the tab for that party's share of

4    the contamination. Mission wants City to pick up half of Star Laundry's share,

5    apparently because Star Laundry was in Visalia at the time. Star and its link to

6    Mission [and its link, such as it is, to City] are discussed as they seem appropriate

7    to each factor.

## II.

### Factors

10    As recognized by both the *Boeing* and *Davis* Courts, this Court's allocation of

11    cleanup costs requires that it identify factors relevant to the issue [even if one or

12    more have not been recognized in case law before]; the Court should at the same

13    time ignore factors that are not relevant, even if those factors have been treated as

14    central to other cases. The first of both sets of factors are essentially the same: are

15    the discharges that can be attributable to each party distinguishable from one

16    another? Numbers 3 and 4 of the Gore Factors, when paired with number 2 of the

17    Torres factors give an interesting perspective on a party's contribution: Gore looks

18    to the "degree of involvement" of each party in contributing to the waste and reviews

19    the toxicity of that waste separately while Torres looks for "culpability." If each of

20    these are viewed in light of the other, the consideration is not only of a party's

21    contribution, but the party's passivity or activity in causing the release or discharge.

22    While Gore factor 2 could play a role in such an analysis, that would seem a spurious

23    inquiry here since there is no evidence of the amount of PCE that was deposited into

24    the sewers or how much was released from the sewers.

25    The *East Bay Park* Court took all these factors into account and noted that

26    the factors often overlap, may not be material to a given case, and that other factors

27    might be appropriate in some cases. This case is no different, and several factors

28    are combined to allow the argument to flow sensibly.

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-5-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A.** ***East Bay Park*** **Factors 2, 3 & 4 [and an unnumbered factor]:**

- ■ **The ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished;**
- ■ **The amount of hazardous waste involved; and,**
- ■ **The degree of toxicity;**
- ■ **Other factors: Mission's relationship to Star Laundry.**

A remarkable omission from Plaintiff's case is evidence of how much PCE was deposited into the City's sewers by Mission Linen [or Star Laundry] at any time, or how much made it out of City's sewers into the surrounding soils, or when it might have happened from either dry cleaner.  Mission Linen's own expert gives for his opinion that Mission Linen and Star Laundry discharged separator water into the sewers with PCE in it. Doc. 146, p. 255:13-16.  He also gives as an opinion that PCE evaporated and made its way into City's storm drains, but cannot point to evidence showing PCE is or has ever been in those storm drains.  Doc. 146, p. 256:17-257:12.  The record is devoid of factual support for the conclusion that PCE made its way into storm drains, at least to any degree significant enough to require a cleanup.  The only source of PCE that is unequivocally supported in the record is Mission Linen and Star Laundry's purposeful dumping of them into the sewer system.

Another glaring omission from the evidence in this case is, a distinction between the PCE that made its way into the City sewers and the PCE that is now in the ground near Mission Linen.  Mission Linen cannot distinguish them because Mission Linen and Star Laundry are the only persons in the record to have released PCE into the environment in that area.

At the same time, any contribution City might have made to PCE contamination is entirely derivative of the practices by Mission Linen, learned and continued from Star Laundry; in other words, any contribution by City [if any has

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-6-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1  been proved at all], is entirely derivative from the conduct by Mission Linen and the
2  company whose practices they continued.   There is an absence of evidence that
3  anyone other than Mission Linen and its predecessor was responsible for the
4  presence of PCE in the area of the Mission Linen site.   Star Laundry ran the dry
5  cleaning operation for a while and then, when Mission Linen bought the place in
6  1978, they continued the exact same practices until 1983.  Any release of PCE from
7  City's sewers is derivative—dependent even—on the conduct of Mission Linen and
8  its predecessor.

9      The appropriate findings of fact here are:

10     1. To the extent City "contributed" to a discharge of PCE, that contribution
11        was not knowingly made and was derivative of the willful disposal by
12        Mission Linen and Star Laundry.

13     2. The amounts of waste are not known, but there is no dispute PCE is
14        considered a toxic chemical.

15     3. Mission Linen acquired the Mission Linen plant from Star Laundry and
16        continued Star Laundry's practice of disposing PCE into the sewer.

17  **B. *East Bay Park* Factors 1, 5, 6, & 10:**

18     ■ **The parties' relative fault or culpability;**

19     ■ **The degree of care exercised by the parties with respect to the**
20        **hazardous waste concerned, taking into account the characteristics**
21        **of such hazardous waste;**

22     ■ **The degree of involvement of the parties in the generation,**
23        **transportation, treatment, storage or disposal of the hazardous**
24        **waste; and,**

25     ■ **Knowledge and/or acquiescence of the parties in the contaminating**
26        **activities.**

27     Mission Linen will, no doubt, point to defects in City's sewers as evidence of
28  City's contribution to discharges of PCE.  What Mission Linen will not be able to

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-7-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1   point to is evidence of PCE that originated from any source other than Mission Linen

2   or its predecessor, Star Laundry.  And, while Mission Linen will no doubt ascribe all

3   sorts of pejoratives to City's failure to aggressively maintain every inch of its sewers

4   in pristine condition, it will be unable to point to a single choice by a decision maker

5   for the City [or even an unauthorized decision by someone acting on City's behalf] to

6   dump PCE into a subterranean wastewater disposal system.

7          That goes directly to culpability [as opposed to mere liability].  Mission has

8   presented evidence of defects in City's sewers, but has presented no evidence that

9   City had notice of the defects, or that City had notice that Mission Linen and its

10  predecessor spent over a decade dumping toxic chemicals into it.

11         Mission Linen tries to paint City as some kind of harrowing, shadowy agency

12  rubbing its hands together to do nothing while its sewers leaked PCE.  It has failed

13  to produce evidence of that.  Case law has held that improper and illegal dumping

14  of chemicals by businesses into drains that ultimately go to sewers can be

15  foreseeable, but foreseeability is a negligence issue, and it is difficult to equate a

16  merely foreseeable event, like awareness of a possibility that dry cleaners might

17  illegally dump chemicals into sewers, with specific companies watching those

18  chemicals go into the drain.  City's knowledge that dry cleaner operations were

19  occurring at the Mission Linen/Star Laundry site is not the same thing as knowing

20  Mission Linen and Star Laundry were dumping toxic chemicals into their drains.

21  Quoting Judge Robert J. Hinkle, Judge Stephen Reinhardt once explained why a

22  knowing that a dire consequence is possible [i.e., a foreseeable dire consequence] is

23  no substitute for a warning of its virtual certainty: "I know every time that I get on

24  an airplane that it could crash, but if you tell me it's going to crash, I'm not getting

25  on.' [Citation.]" *U.S. v. Rodriguez-Vega*, 797 F.3d 781, 790 (9th Cir. 2015).

26         By the same token, City knows every time someone uses a drain, something

27  unpleasant might go into the sewer; but if you tell the City that the unpleasant stuff

28  is a highly toxic chemical that will leach into groundwater, there is a new

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-8-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1  reasonableness to the expectation that the City will take a few extra steps to check

2  it, or maybe require a different disposal process.  At bench, there is no evidence of

3  Mission Linen or Star Laundry telling the City they were dumping toxic waste into

4  the sewers, and their own expert was unaware of any such notifications.  Doc. 146,

5  p. 287:17-288:9 [excluding those portions stricken by the Court].  While Mission

6  Linen's decision to dump toxic waste into sewers might have been foreseeable, City

7  made no decision to accept and transport that chemical: Mission Linen poured it in

8  and let it flow just as it would any other effluent.

9        And, Mission Linen's decision to pour the chemical into the sewers reflects

10  Mission Linen's acquiescence to City's disposal of it in the same manner as City

11  disposed of Mission Linen's other waste.  Mission Linen cannot seriously claim it did

12  not know that its drains went to a City sewer; they were legally obliged to maintain

13  that connection.  Jt. Exh. 88, § 4265.  City's acceptance of Mission Linen/Star

14  Laundry's PCE was passive; they did so in the confines of their own facility while

15  City did not know.  And while Mission Linen's expert says they [and Star Laundry]

16  had "no other option" but to put separator water into the sanitary sewers, this only

17  demonstrates their knowledge of doing so.  The lack of another disposal method

18  might demonstrate mere fault without greater scienter; the culpability of these

19  polluters lies in doing so on the Q.T. for over a decade.

20        In short, City's fault, if any can be found, is entirely attributable to conduct

21  first undertaken by Mission Linen and Star Laundry, whose PCE-disposal practices

22  Mission Linen adopted and continued.  Mission Linen and Star Laundry may have

23  used City's sewer as a "transporter" under CERCLA's strictest definition, but City

24  never knowingly accepted PCE for transport; it was done passively, without

25  knowledge.  To be clear: City was used as an unwitting conduit to the environmental

26  shortcuts taken by Mission Linen and Star Laundry.

27  ///

28  ///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-9-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1    Proposed findings of fact are:

2    1.  Mission Linen's contribution to the disposal of PCE was willful, as was

3         Star Laundry's.   City's acceptance of the PCE into its transportation

4         facility was passive and not knowingly made.

5    2.  Any negligence of City in the maintenance of its sewers was not done in

6         light of a known hazardous substance: any failure to meet the standard of

7         care was not done with respect to PCE, but was done with the

8         understanding that the sewer was handling sewage.

9    3.  Mission Linen's and Star Laundry's level of involvement was total: they

10        bought the PCE, they used the PCE, they profited from the use of PCE,

11        they disposed of it into the sewers.   City's level of involvement was at the

12        fringes because the acceptance of the PCE into the sewers was neither

13        known nor announced.

14   **C.  *East Bay Park* Factor 7:**

15   ■   **The degree of cooperation by the parties with government agencies**

16        **to prevent harm to the public health or the environment.**

17   Mission Linen spent a good amount of time trying to focus the Court's

18   attention on the issue of City's cooperation [or lack of cooperation] with

19   governmental agencies.    Specifically, Mission Linen paints City as downright

20   obstructionist.   City argues, *post*, that there is no evidence of either obstructionist

21   practices or even a lack of cooperation.   And even if such an inference can be drawn

22   from the record, there is no evidence that any of City's conduct has resulted or will

23   result in increased costs of the cleanup.

24   **1.  Lack of Cooperation**

25   Mission Linen's argument that City was uncooperative is based on unjustified

26   inferences from episodes that appear to have either worked themselves out or have

27   caused no real angst to anyone save the man who was paid to complain about it:

28   Mission Linen's expert, Mr. Krasnoff.   While it is true that a party's cooperation is a

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-10-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

factor reasonably considered by a court in the matter of allocation, Courts have criticized over-reliance on this factor "that often "results in an inordinate amount of mudslinging in an effort to make each party look like the bad guy ... [N]either party comes out smelling like a rose."" *East Bay Park*, 135 F.Supp.2d at 1097, quoting *Browning–Ferris Indus., of Ill., Inc. v. Ter Maat,* 13 F.Supp.2d 756, 778 (N.D.Ill.1998), *rev'd in part on other grounds,* 195 F.3d 953 (7th Cir.1999).  In *East Bay Park*, each of the parties accused the other of not cooperating with governmental authorities while insisting they were, couched in "sometimes vitriolic, and ever constant, attacks on each other's conduct or lack thereof, [which] clouded the record and made it difficult at times to sort out the myriad of accusations."  135 F.Supp.2d at 1097. City will not engage in the chthonic practice of mutual mudslinging, and asks this Court to consider the bases for Mr. Krasnoff's opinion that City was the great barricade to the Golden State's effort to clean up Mission Linen's mess: it is unsupported.

Mr. Krasnoff testified there were several letters sent by DTSC to City about a request for information; he then criticizes City for having produced information dealing with sites other than the Mission Linen location.  What is missing is a description of the information DTSC requested.  For instance – was City asked for information about the Mission Linen site and no other?  Or was it a request for information about three, seven, or even twelve sites [eleven of which might have been identified in one letter only to be followed by a twelfth site—maybe the Mission Linen Site—in a separate letter sent a few days later]?  Mr. Krasnoff failed to offer evidentiary support for his opinion that City was uncooperative with DTSC's request for information.

And, Mr. Krasnoff is also critical of City's production of 80 gigabytes worth of documents, some of which concerned sections of the sewer system that were not near Mission Linen.  Again, what was requested by the Agency: was it information about Mission Linen only, or about a dozen sites around the City?  Another piece of

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-11-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

information missing from the bases for Mr. Krasnoff's opinion: does DTSC think City was uncooperative?  That would seem to be more properly subject to testimony from a DTSC employee, or even obtainable from the public record since failure to cooperate with such requests are punishable by fines up to $25,000.00 per day per violation.  (See, Cal. Health and Safety Code §§ 25358.1 & 25367.)  An expert's opinion seems entirely unhelpful to the question of whether a regulatory agency's requests were properly answered when one can ask the agency, or just peruse the public record for judicially noticeable evidence.  City presented uncontroverted evidence that a significant effort was made by City employees to produce all information DTSC asked for [Doc. 147, pp. 499:11-500:5]; and Mission Linen fails to offer evidence of what was requested, making any opinion that the response was inappropriately late, too narrow, or too broad to be considered well-supported. What's more, Mission Linen fails to offer evidence showing whether DTSC considers City's response to have been uncooperative and, if they ever did, whether City responded to such concerns.

Mr. Krasnoff also tries to argue that City's permitting process indicated a lack of cooperation based on a single communication from DTSC, made on July 21, 2014 about the permitting process for boring long-term monitoring wells.  That is the same letter that was the subject of Mr. Olmos' deposition testimony that was read into the record at Doc. 146, pp. 327:23-328:9, which is not in the record but is the subject of City's request for judicial notice filed with this brief [exhibit 1 to that request].  The deposition testimony, introduced without that context, establishes nothing save the unsurprising suggestion that the City Manager does not remember specific permits issued years ago, but is presented as proof of a city gone rogue against State authority.  Are Mission's contractors still standing on the street corner waiting to drill?  That is certainly absent from the record.  But the letter, a governmental document subject to judicial notice [which is requested here], identifies permits nowhere near the Mission Linen site, but miles away at 2901 S. Mooney Blvd.

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-12-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Further, there is nothing surprising about a governmental agency updating a permitting process, for any number of reasons.  It might be to mitigate identified problems with the process, or be the result of unintended consequences from an update to another part of the process, or even just hiring someone new who was not yet sure how it was supposed to work.  Without more information indicating an intent to obstruct, the mere appearance of a change to the process should not give rise to an inference of obstruction.  All Mr. Krasnoff has managed to show is a brief episode of confusion that appears not to have been raised again; that is simply not obstructionism.

Mission also tries to make hay of a letter in which City said it did not believe that a meeting with DTSC would be in its best interests at that time; again, the theory fails under a careful review of the evidence.  Mission Linen focuses on a brief quote, but the letter itself shows why the meeting was not in City's best interests at that time.  Plaintiff's exh. 86.  DTSC did not ask City to meet with it to discuss DTSC's concerns about environmental issues, but rather to discuss inquiries made by Mission Linen representatives, all laid out in "a proposed agenda and "List of Requests and Questions" prepared by Ms. Lori J. Gualco, Esq, [*sic*]."  This Court is well acquainted with Ms. Gualco; she was Mission Linen's lawyer.   She is the attorney who sued the City.  The City made clear: it wanted to know who was asking for this meeting: was it DTSC or Mission Linen?  Was the meeting prompted by DTSC's regulatory oversight, in which case DTSC might have proposed the agenda, or was it a pre-litigation dog and pony show proposed by opposing counsel?  City asked what the purpose of the meeting was and who was asking for it, but there is no evidence that DTSC adopted the meeting, or its purposes, as its own.  Despite City's stated concerns, DTSC failed to say the meeting was being held at its instance as an exercise of its authority over the matter or that DTSC wanted to meet about investigating and, if necessary, cleaning up toxic substances.  Instead, the meeting appeared to be a legal matter, prompted not by environmental concerns but issues

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-13-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1  related to litigation.  City did not refuse to cooperate with DTSC; City refused to be

2  roped into meeting with no official agenda or regulatory host that did not bear the

3  appearance of a regulatory exercise but looked for all the world like a box to be

4  checked from Counsel's pre-litigation strategy form.  Once litigation is filed, the

5  Federal Rules govern a party's cooperation.   At bench Mission Linen never

6  complained about City's lack of cooperation.

### 2. Causation of increased cleanup costs due to the allegation that City did not cooperate with government authorities

9  But even if there was good evidence of City's lack of cooperation, there is no

10  evidence to show how damages would have been affected by City's greater

11  supplication.  Let us assume that, when breaks in the sewers were discovered in

12  2009 [Doc. 145, p. 73:7-11], the Visalia City Council members dressed themselves

13  in sack cloth and journeyed barefoot to Tollhouse Road to prostrate themselves

14  before the DTSC, committing every dollar that could be squeezed from the electorate

15  at gunpoint, with teams of forced laborers dragged from the College of the Sequoias

16  to immediately catalogue and produce every document relevant to the perfect degree

17  [and no more] to the DTSC's request for information about that site and no other;

18  there is no evidence of how that would have reduced the costs of the cleanup effort

19  by even a dime.

20  There is no evidence that the City's relationship with DTSC has caused an

21  increase in the cost of this clean up, or even of this litigation.  The only increased

22  cost evident here is the greater expense borne by both parties to generate and

23  respond to Mr. Krasnoff's procured shot at a governmental entity.

### 3. Conclusion

25  The opinion that City was uncooperative is unsupported by evidence, and

26  even if City had been uncooperative, there is no evidence that City's lack of

27  cooperation caused an increase in the costs suffered or to be suffered by any party

28  in this cleanup effort.  Mission Linen never raised this issue in discovery.

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-14-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Proposed findings of fact:

1. There is no evidence that City was uncooperative or obstructionist in its dealings with governmental agencies.

2. Even if City did cause some delay, there is no evidence that the delay caused an increase in the cleanup costs.

**D.** ***East Bay Park* Factors 9 & 11:**

- ■ **Economic benefits received by the parties from contaminating activities or remediation;**

- ■ **Contracts between the parties.**

The only persons who "benefitted" from dumping PCE in a manner that allowed the chemical to be released from City's sewers into the soils beneath Visalia are Mission Linen and Star Laundry. City had no apparent "contract" with either of them, save the contract inherent in the offer of sewer services to Mission and the company from which it took over the dry cleaning operation, and the acceptance of those sewer services by Mission and Star that would have been subject to the limitations imposed by ordinances prohibiting the release of substances like PCE into the sewers. Jt. Exh. 83-88.

It is difficult to see how City benefitted from the release at all: City is not a for profit corporation or business concern that entices shareholder investment by prompting increases in toxic waste dumping per customer, or that advertises high-fiber diets in order to reap profits off the secondary market from such cereals due to increased toilet flushes: it is not a for profit enterprise. Doc. 147, p. 514:11-13. There is no evidence that City is jockeying for an advantageous position among a crowded field of sewer-service providers, offering consumers incentives and sales to switch their valve from Acme Sewers, Inc. to theirs. It is a governmental entity, collecting fees (taxes) to provide a public service.

> "Government is instituted for the common good: for the protection, safety, prosperity, and happiness of the people: and not for the profit, honor, or private interest of any one man, family, or class of men...."

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-15-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Mass. Const., Part 1, Art. XII (1780).  There is no evidence of a profit, honor, or private interest enjoyed by the City of Visalia that arose from toxic chemicals in its sewers.  Any benefits were enjoyed by others: Mission Linen and the company they bought the dry cleaning operation from and whose practices were continued for profit, Star Laundry.  While it may be possible to argue that City employees benefitted from a decision not to spend public money, thus generating good will among the populace, the argument fails for a lack of evidence showing: any such decision being made in this case; any desire to use such a decision to generate such good will; or a well-spring of anti-tax constituents rising from the masses in a spirit of good will for the City at having made such a decision.

But Mission Linen did dump PCE into sewers, meaning they did not have it shipped away by a disposal service.  In other words, Mission Linen and its predecessor derived a concrete and perceptible business-related benefit from their purposeful disposal of PCE into sewers, in violation of law: the only perceptible benefit City appears to have derived from the actual polluter's conduct is being summonsed to trial for being foolish enough to have provided dumpers of toxic-waste with sewer services that were easier to use than proper disposal contractors.

Proposed findings of fact:

1. There is no evidence that City received an economic benefit from contaminating activities;

2. Mission Linen enjoyed the economic benefit from running a dry cleaner operation there from 1978 until about 1983.

3. The economic benefit Star Laundry enjoyed from running the dry cleaner operation from 1971-1978 should inure to Mission Linen, who enjoyed the good will of those years of operation and the benefit of simply taking over an already-established dry cleaning business.

///

///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-16-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1

### E. *East Bay Park* Factor 8:

2

■ **Financial resources or economic status.**

3      Neither party has pleaded or offered evidence of an inability to pay its fair

4 share.

5

**III.**

6

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

7      Mission Linen has suggested that City pick up 55% of the tab for the cleanup

8 of PCE used in their dry cleaning facilities.  Mission Linen may argue that they do

9 assign more than half to the dry cleaners, but the truth is that they propose an even

10 split of the orphan share, resulting in City being tapped for more than half the bill.

11 In support of this, City expects Mission Linen to focus on facts establishing liability,

12 facts more relevant to an analysis under *Adobe Lumber v. Hellman* than cases dealing

13 with allocation.  658 F.Supp.2d 1188 (2009).  In *Adobe Lumber*, this Court found

14 triable issues of fact in a CERCLA case alleging a City's liability for cleanup costs,

15 that issue being whether the City's sewers were a cause of some amount of PCE

16 leaking into the ground after dry cleaners poured the PCE into those sewers [a

17 substantial issue concerned foreseeability].  *Id.* at 1206-1207.  But *Adobe Lumber*

18 did not consider allocation; that was left for later.

19      Here, the bare fact of liability was not contested – the only issue was

20 allocation.  Throughout much of this case [and through the trial], Mission Linen

21 used the facts relevant to an *Adobe Lumber* analysis to paint the City with a black

22 hat, using exaggerated descriptions of City's conduct and focusing on minutiae.  One

23 need only review Mission Linen's description of the City's conduct with DTSC to see

24 the tactic laid bare.  A single letter from City, declining DTSC's invitation to a meeting

25 set up by Mission Linen's lawyer to discuss Mission Linen's concerns, and that asked

26 DTSC to let City know whether the meeting and subject matter was in truth of

27 interest to DTSC or Mission Linen, is treated like Visalia's declaration of secession.

28 ///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-17-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1    The *East Bay Park* case appears to caution against such knee-jerk reactions,

2    counselling a more thoughtful approach.  135 F.Supp. *in passim.*  There, the public

3    entity that came to own a known capped landfill was accused of negligently

4    maintaining it, causing leaks from that landfill into the ground around it.  And the

5    plaintiff, the successor to the waste management company that filled and capped

6    the landfill, capped it in a manner consistent with governmentally approved

7    methods, but wastewater from the landfill began to leak nevertheless.  Despite the

8    plaintiff's protests that the public entity assumed 100% liability for the site when it

9    took title to it, and their expert tried to assign 70% fault to the public entity due to

10   negligence in maintaining the site.  The court did not bite.  "Basic principles of equity

11   would suggest that the party that has profited for 38 years from the creation and

12   operation of a landfill should bear primary responsibility for the hazardous

13   byproducts of its activity."  *East Bay Park*, 135 F.Supp.2d at 1090.)  There is no

14   reason for this case to be different.

15   **Proposed Conclusions of Law and their reasons**

16   Because the greater culpability in this case lies in Mission Linen and Star

17   Laundry, whose discharge of PCE into the sewers was intentional and knowingly

18   undertaken as opposed to City's fault, which is substantially less than theirs as they

19   were not actually aware of the disposal of a dangerous chemical in their sewers, the

20   relative culpability lies with Mission Linen and its predecessor whose practices and

21   good will Mission Linen continued, with both generating profits not available to a

22   City operating a fee-based, non-profit sewer system.  While the discharge of PCE

23   might have been foreseeable to City under *Adobe Lumber*, it was not known, reducing

24   its percentage of fault in relation to the culpability of Mission Linen and Star

25   Laundry.  In the absence of a knowing acceptance of the PCE for transport through

26   City's sewers, City's acceptance was passive as opposed to the active disposal by

27   Mission Linen and Star Laundry, whose involvement in the disposal was all-in.

28   ///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-18-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Conclusions of Law:

- ■ Mission Linen and Star Laundry's allocation bears a remarkable resemblance to that of the waste management company in *East Bay Park*. The allocation to the asset management company's successor-in-interest was 95%, with the public entity being allocated a 5% share of the costs.

- ■ Star Laundry's "orphan share" should go to Mission Linen. There is no evidence that City and Star Laundry had a relationship that was any different than City's relationship to Mission Linen. But Mission Linen bought Star Laundry and kept doing the same thing Star Laundry did. If any part of Star Laundry's orphan share is allocated to City, that orphan share should be nominal due to the clear evidence of Mission Linen's role as a continuing practitioner of Star Laundry's practices.

**IV.**

**CONCLUSION**

Mission Linen's exaggerations notwithstanding, City's contribution in this matter should not be significant; it should certainly not approach 55% as suggested by people Mission Linen is paying to bad-mouth the City. In *East Bay Park*, a public entity that knew what was under its property was allocated a 5% share, the lion's share going to the successor-in-interest of the party that profited from the disposal of materials that generated a toxic waste. Here, City should not be saddled with a share greater than half the total cleanup when it neither enjoyed a profit or benefit from the disposal, and did not knowingly accept the chemical for transport. As the *East Bay Park* Court observed, the suggestion goes against basic principles of equity.

///

///

///

///

///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-19-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1     Any allocation in this case should look more like *East Bay Park* than the polluter's

2   paradise proffered by Mission Linen.  With the benefit of Gore, Torres, and East Bay

3   Park the world is ready for "Ishii Factors," which mitigate against Mission Linen

4   dumping its load on the City of Visalia here.

5                         Respectfully submitted,

6   Dated:  February 28, 2018        HERR PEDERSEN & BERGLUND LLP

7

8                           By:   /s/ Leonard C. Herr

9                                 LEONARD C. HERR
                              Attorney for Defendant,
                              CITY OF VISALIA

10

11  Dated:  February 28, 2018        WOOD, SMITH, HENNING & BERMAN LLP

12

13                          By:   /s/ Thomas F. Vandenburg

14                                THOMAS F. VANDENBURG
                              Attorney for Defendant,
                              CITY OF VISALIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-20-

**BRIEF RE: PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

SUPPLEMENTAL [PROPOSED] FINDINGS OF FACT AND
CONCLUSIONS OF LAW

Leonard C. Herr, #081896
Ron Statler, #234177
Caren Curtiss, #311218
HERR PEDERSEN & BERGLUND LLP
Attorneys at Law
100 Willow Plaza, Suite 300
Visalia, California  93291
Telephone:  (559) 636-0200

Thomas F. Vandenburg, #163446
Emil A. Macasinag, #256953
WOOD, SMITH, HENNING & BERMAN LLP
10960 Wilshire Boulevard, 18th Floor
Los Angeles, California 90024-3804
Phone:  310-481-7600 ♦ Fax:  310-481-7650

Attorneys for Defendant, CITY OF VISALIA

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| MISSION LINEN SUPPLY,<br><br>              Plaintiff,<br><br>     v.<br><br>CITY OF VISALIA and DOES 1-20,<br>inclusive,<br><br>              Defendants. | Case No.: 1:15-cv-00672-AWI-EPG<br><br>**DEFENDANT CITY OF VISALIA'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Date:           April 9, 2018<br>Time:          9:00 a.m.<br>Location:     Courtroom 2<br>Trial Date:  December 12, 2017<br><br>Assigned to Senior United States District Judge Anthony W. Ishii, For All Purposes |

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

Defendant CITY OF VISALIA ("City") hereby submits its [Proposed] Findings of Fact and Conclusions of Law, pursuant to the Court's orders.

///

**DEFENDANT CITY OF VISALIA'S [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

1  *See Reporter's Transcript of Bench Trial Proceedings ("Transcript"),* Vol. 4 at 557:25-

2  558:3 (Dec. 15, 2017).

3  **[PROPOSED] FINDINGS OF FACT**

4      1.    At all times relevant since 1978, Plaintiff MISSION LINEN SUPPLY

5  ("Mission" or "Plaintiff") has owned the real property located at 520 East Mineral King

6  Avenue in Visalia, California ("Mission Linen Property").  The Mission Linen Property

7  is located on the northwest corner of East Mineral King Avenue and South Tipton

8  Street, and is situated on three parcels (Assessor Parcel Number [APN] 094-221-006-

9  000, 094-221-008-000, 094-221-014-000) totaling approximately 1.5 acres in a

10  commercial/industrial area.  Doc. 68 at 2:9-2:14.

11      2.    The Mission Linen Property has been the site of an industrial laundry

12  facility.  Doc. 68 at 2:15-2:15.

13      3.    There are two buildings on APN 094-221-008-000.  The larger building

14  ("Laundry Building") houses the main laundry operations, while the smaller building

15  west of the Laundry Building is used as a storage warehouse ("Warehouse Building").

16  Doc. 68 at 2:18-2:20.

17      4.    The Laundry Building has been used for laundry operations since

18  approximately 1937.  Visalia Laundry and Dry Cleaning operated in the Laundry

19  Building from approximately 1937 to 1971.  Star Laundry and Dry Cleaning ("Star

20  Laundry") owned APNs 094-221-008-000 and 094-221-014-000 and conducted dry

21  cleaning operations in the northern half of the Warehouse Building from 1971 to

22  1978.  Plaintiff acquired APNs 094-221-008-000 and 094-221-014-000 in 1978, and

23  APN 094-221-006-000 in 2003.  Doc. 68 at 2:23-3:5.

24      5.    Perchloroethylene ("PCE") is a solvent that has been used in dry

25  cleaning operations.  Plaintiff utilized PCE in the course of its dry cleaning

26  operations.  From 1978 to 1983, Plaintiff stored PCE in a 55-gallon drum and in the

27  dry cleaning machine that were located on the north end inside the Warehouse

28  Building.  In 1983, Plaintiff discontinued dry cleaning operations and the handling

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-23-

**DEFENDANT CITY OF VISALIA'S [PROPOSED]**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1   and storage of PCE at the Mission Linen Property.  Also in 1983, the dry cleaning

2   machines on the Mission Linen Property were scrapped and removed.  Doc. 68 at

3   3:6-3:12, 3:25-3:26.

4         6.   There is no evidence that Star Laundry or Plaintiff relied on the Hoyt

5   Sniff-O-Miser installation operating and service instructions when installing,

6   operating, or servicing any dry cleaning machine on the Mission Linen Property.  *See*

7   *Transcript,* Vol. 2 at 242:11-242:12 (Dec. 13, 2017).

8         7.   Between approximately 1971 and 1978, separator water generated

9   from the dry cleaning process was discharged into the building drain at the Mission

10  Linen Property, which was discharged to the 8-inch vitrified clay pipe ("VCP") sewer

11  main beneath East Mineral King Avenue.  From 1979 to 1983, separator water

12  generated from the dry cleaning process was discharged into the building drain at

13  the Mission Linen Property, which was discharged to the 21-inch VCP sewer main

14  beneath East Mineral King Avenue.  The City has owned and operated the storm and

15  sanitary sewers at all times relevant.  PCE has been detected in the indoor air, soil,

16  soil gas, and groundwater at and around the Mission Linen Property and near the

17  City's sewers.  Doc. 68 at 3:13-3:21, 3:27-3:28; *see also Transcript,* Vol. 2 at 237:12-

18  237:25 (Dec. 13, 2017).

19        8.   From 1971 to 1983, there were active discharges of separator water

20  from dry cleaning equipment at the Mission Linen Property into a sewer lateral

21  connected to the City's sewers.  Plaintiff discharged separator water into the sewer

22  lateral connected to the City's sewers from approximately March or April of 1978

23  until 1983.  *See Transcript,* Vol. 2 at 292:23-293:6, 297:5-297:18 (Dec. 13, 2017).

24        9.   During Star Laundry's use of PCE in dry cleaning operations (1971-

25  1978) and then Plaintiff's use of PCE in dry cleaning operations (1978-1983) at the

26  Mission Linen Property, the only option or manner of disposing of separator water

27  was to the City's sewers.  *See Transcript,* Vol. 2 at 239:6-239:17 (Dec. 13, 2017).

28  ///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-24-

**DEFENDANT CITY OF VISALIA'S [PROPOSED]**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

10.     There is no evidence as to the amount of PCE that has remained in the City's sewers since 1983.  *See Transcript,* Vol. 2 at 293:7-294:3, 305:14-305:21 (Dec. 13, 2017).

11.     There is no evidence showing that Plaintiff informed the City it was discharging separator water into a drain on the Mission Linen Property which ultimately connected to the City's sewer main beneath East Mineral King Avenue. *See Transcript,* Vol. 2 at 287:17-288:9 (Dec. 13, 2017).

12.     Plaintiff has not assessed the condition of the sewer lateral known to convey wastewater from the Mission Linen Property to the City's sewer main beneath East Mineral King Avenue.  *See Transcript,* Vol. 2 at 247:15-249:7 (Dec. 13, 2017).

13.     Plaintiff's expert, Peter Krasnoff, relies in part on studies of sites located in Kentucky and New York to opine that PCE-impacted storm water was released through the City's storm sewer.  *See Transcript,* Vol. 2 at 258:2-258:14.

14.     Because no storm water data has been collected at or near the Mission Linen Property, there is no evidence showing PCE-impacted surface water runoff or storm water ever entered into the City's storm sewer.  *See Transcript,* Vol. 2 at 256:17-265:4 (Dec. 13, 2017).

15.     The available soil vapor data collected at and near the intersection of Tipton Street and East Mineral King Avenue do not support Plaintiff's theory that vapor emissions of PCE were sorbed onto airborne particulates, which were discharged through the City's storm drains during rain events, and then released through the City's storm sewer.  *See Transcript,* Vol. 4 at 532:23-534:25 (Dec. 15, 2017).

16.     When PCE is used in dry cleaning operations, it is common for those operations to result in releases of PCE into the environment.  Examples of such PCE releases include from dry cleaning machine doors that accidentally pop open; from faulty or worn seals and hoses; and during the manual transfer of clothing/fabric out of a dry cleaning machine into another machine.  *See Transcript,* Vol. 2 at 262:7-

**DEFENDANT CITY OF VISALIA'S [PROPOSED]**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

1  263:19 (Dec. 13, 2017).

2  17.  At all times relevant to this litigation, during which PCE was

3  discharged into the sanitary sewer laterals from the Mission Linen site, there have

4  been blockages and surcharge events that have caused sudden and accidental

5  releases from the City's Subject Sewers.  Vol. 1, at 11:16-19; Amended Pre-Trial

6  Order, p. 3, ll. 22-23 [Doc. 68.]; Order on Joint Stipulation, p. 3, ll. 17-22 [Doc. 71]

7  (entered June 16, 2017).

8  18.  In other cities such as the City of Lodi, the City of Modesto, the City of

9  Watsonville, and the City of Eureka, PCE was detected in the subsurface in the

10  vicinity of sewer lines that were suspected to have leaks.  *See Transcript,* Vol. 2 at

11  294:14-296:20 (Dec. 13, 2017).

12  19.  Plaintiff conducts industrial laundry operations in a number of

13  locations.  *See Transcript,* Vol. 2 at 301:2-301:8 (Dec. 13, 2017).

14  20.  Plaintiff's expert, Peter Krasnoff, has been retained by Plaintiff's

15  counsel, Jan Greben, in more than 10 cases; and has been paid in excess of

16  $2,000,000 to provide expert opinions in those cases.  *See Transcript,* Vol. 2 at

17  278:12-278:17 (Dec. 13, 2017).

18  21.  There is no evidence that City was uncooperative or obstructionist in

19  its dealings with governmental agencies.

20  22.  Even if City did cause some delay, there is no evidence that the delay

21  caused an increase in the cleanup costs.

22  **[PROPOSED] CONCLUSIONS OF LAW**

23  1.  The party asserting a claim or defense has the burden of proving every

24  essential element of said claim or defense.  *Dir., Office of Workers' Compensation*

25  *Programs, Dep't. of Labor v. Greenwich Colleries,* 512 U.S. 267, 275, 114 S.Ct. 2251,

26  129 L.Ed.2d 221 (1994).

27  2.  The standard of proof in this case, a civil case, is preponderance of the

28  evidence.  *In re Exxon Valdez,* 270 F.3d 1215, 1232 (9th Cir. 2001).

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-26-
**DEFENDANT CITY OF VISALIA'S [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

3.     To determine the reliability of expert opinion testimony, as it must, a court should be guided by the following factors: (1) whether the methodology used has been tested; (2) whether the methodology has been subjected to peer review; (3) whether there is a known potential rate of error; (4) whether there are standards controlling the technique used; and (5) whether a known technique is generally accepted in the relevant scientific or technical community.  *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 594, 113 S.Ct. 2786, 125 L.Ed.2d. 469 (1993).

4.     To establish a prima facie case in a private cost recovery action under CERCLA, a plaintiff must demonstrate that (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, … (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred,… (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," … and (4) the defendant is within one of four classes of persons subject to the liability provisions of [42 U.S.C. § 9607(a)].  *Adobe Lumber, Inc. v. Hellman,* 658 F.Supp.2d 1188, 1192 (E.D. Cal. 2009) (*"Adobe Lumber"*), quoting *Carson Harbor Village, Ltd. v. Unocal Corp.,* 270 F.3d 863 (9th Cir. 2001) (*"Carson Harbor Village"*).

5.     [Plaintiff has failed to establish a "release" or "threatened release" of PCE or any other "hazardous substance" from the City's sewers, which means Plaintiff cannot establish a prima facie case in its CERCLA cost recovery action against the City.  *See* 42 U.S.C. § 9601 (22); *see also Adobe Lumber,* 658 F.Supp.2d at 1192.]

6.     [Plaintiff has failed to establish that its alleged response costs are necessary under CERCLA.  42 U.S.C. § 9607(a)(4)(B); *see also Waste Mgmt. of Alameda County, Inc. v. E. Bay Reg'l Park Dist.,* 135 F.Supp.2d 1071, 1099 (N.D. Cal. 2001) ("[a] response cost is viewed to be necessary under CERCLA if it is not duplicative of other costs, wasteful, or otherwise unnecessary to address the

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-27-

**DEFENDANT CITY OF VISALIA'S [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1    hazardous substances at issue").]

2        7.    [Plaintiff has failed to establish that its alleged response costs have

3    been or will be consistent with the national contingency plan.   42 U.S.C.

4    §9607(a)(4)(B);   *see also* 40 C.F.R. § 300.700(c)(3)(i) (setting forth national

5    contingency plan requirements).]

6        8.    The Mission Linen Property is a "facility" under CERCLA's definition of

7    that term.  42 U.S.C. § 9601(9).

8        9.    Under CERCLA, the term "disposal" means the discharge, deposit,

9    injection, dumping, spilling, leaking, or placing of any solid waste or hazardous

10   waste into or on any land or water so that such solid waste or hazardous waste or

11   any constituent thereof may enter the environment or be emitted into the air or

12   discharged into any waters, including ground waters.  42 U.S.C. § 6903(3); 42 U.S.C.

13   § 9601(29).

14       10.   From at least 1978 to 1983, Plaintiff released PCE from the Mission

15   Linen Property into the environment by disposing of separator water.   42 U.S.C. §

16   9601(22); *see also 3550 Stevens Creek Assoc. v. Barclays Bank of Cal.,* 915 F.d 1355,

17   1362 (9th Cir. 1990) ("a disposal requires some affirmative act of discarding a

18   substance as waste and not its productive use").

19       11.   Plaintiff, as the owner of the Mission Linen Property, is within one of

20   the four classes of persons subject to the liability provisions of CERCLA.  42 U.S.C.

21   § 9607(a)(1).

22       12.   Once liability has been assessed in a CERCLA cost recovery action,

23   those parties found liable may seek contribution from any other liable or potentially

24   liable persons.  In resolving contribution claims, the court may allocate response

25   costs among liable parties using such equitable factors as the court determines are

26   appropriate.   *See* 42 U.S.C. § 9613(f)(1).   A potentially responsible party's

27   contribution liability will correspond to that party's equitable share of the total

28   liability and will not be joint and several.  *See Carson Harbor Village,* 270 F.3d at

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-28-

**DEFENDANT CITY OF VISALIA'S [PROPOSED]**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

871.  In exercising its discretion, the court need not limit itself to any particular set of factors.  The array of equitable factors identified by courts include: (1) the parties' relative fault or culpability; (2) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (3) the amount of the hazardous waste involved; (4) the degree of toxicity; (5) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (6) the degree of care exercised by the parties with respect to the hazardous waste; (7) the degree of cooperation by the parties with government agencies to prevent any harm to the public health or the environment; (8) financial resources or economic status; (9) economic benefits received by the parties from contaminating activities or remediation; (10) knowledge and/or acquiescence of the parties in the contaminating activities; and (11) contracts between the parties.  *Waste Mgmt. of Alameda County, Inc. v. E. Bay Reg'l Park Dist.,* 135 F.Supp.2d 1071, 1089 (N.D. Cal. 2001).

13.  Plaintiff's ownership of and operations at the Mission Linen Property involved the use of PCE from approximately 1978 to 1983.  During Star Laundry's use of PCE in dry cleaning operations (1971-1978) and then Plaintiff's use of PCE in dry cleaning operations (1978-1983) at the Mission Linen Property, the only option or manner of disposing of separator water was to the City's sewers.  In contrast, the City's ownership and operation of its sewers do not involve, and have never involved, the use of PCE.  Thus Plaintiff (and Star Laundry before Plaintiff) received all or substantially all of the economic benefits from the use and disposal of PCE at the Mission Linen Property.  There is no evidence as to the amount of PCE that has remained in the City's sewers since 1983.  There is no evidence showing that Plaintiff informed the City it was discharging separator water into the City's sewers.  The City's sewers have apparently experienced issues comparable to other cities such as the City of Lodi, the City of Modesto, the City of Watsonville, and the City of Eureka, *i.e.,* where PCE was detected in the subsurface in the vicinity of sewer lines that were

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-29-

**DEFENDANT CITY OF VISALIA'S [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1   suspected to have leaks.   On these facts, using the appropriate equitable factors,

2   the [VAST MAJORITY] of Plaintiff's alleged response costs, to the extent they are

3   necessary and consistent with the national contingency plan, should be allocated to

4   Plaintiff.  42 U.S.C. §9613(f)(1).

5                                            Respectfully submitted,

6   Dated:  February 28, 2018          HERR PEDERSEN & BERGLUND LLP

7

8                                       By:   /s/ Leonard C. Herr
                                              LEONARD C. HERR
9                                             Attorney for Defendant,
                                              CITY OF VISALIA
10

11  Dated:  February 28, 2018          WOOD, SMITH, HENNING & BERMAN LLP

12

13                                      By:   /s/ Thomas F. Vandenburg
                                              THOMAS F. VANDENBURG
14                                            Attorney for Defendant,
                                              CITY OF VISALIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-30-
**DEFENDANT CITY OF VISALIA'S [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW**