UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISSION LINEN SUPPLY,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>CITY OF VISALIA,<br><br>　　　　Defendant | CASE NO. 1:15-CV-0672 AWI EPG<br><br>**ORDER ON PLAINTIFF'S MOTION TO ENFORCE JUDGMENT AND ORDER FOR SUPPLEMENTAL BRIEFING**<br><br>(Doc. No. 184) |

This is a Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 et seq.) ("CERCLA") case that arises from the contamination of property at and surrounding a dry-cleaning business in Visalia, California from the chemical perchloroethylene ("PCE"). On February 5, 2019, following a bench trial, this Court issued a Findings of Fact and Conclusions of Law ("February Order") pursuant to Rule 52(a)(1). See Doc. No. 176. The February Order determined liability between Plaintiff Mission Linen Supply ("Mission") and Defendant the City of Visalia ("the City") for future necessary response costs. See id.[1] Currently before the Court is Mission's motion to enforce judgment. For the reasons that follow, the motion will be denied in part and supplemental briefing will be ordered.

**RELEVANT BACKGROUND**

Mission owns property that was contaminated by PCE through dry-cleaning activities. See

---

[1] The Court notes that the City has appealed the February Order to the Ninth Circuit. Although the Ninth Circuit has determined that it will decide the appeal without oral argument, an opinion has yet to issue.

Doc. No. 176. Mission is obligated under a consent order by the DTSC to cooperate and remediate the PCE plume/the property. See id. PCE contamination was the result of dry-cleaning activities by Mission and its predecessor, Star Laundry. See id. Although PCE has not been used on the subject property since 1986, PCE has spread beyond the property's borders. See id. The PCE plume coincides with the City's sewer systems, which contain a number of defects that permitted the PCE to "escape" into the environment. See id. Star Laundry (who is insolvent and not a party), Mission, and the City are potentially responsible parties under CERCLA for the PCE plume. See id. After dividing the orphan share of Star Laundry, Mission and the City are each 50% liable for future response costs. See id. Because Mission is obligated by the DTSC to clean up the property and is the plaintiff, the Court declared, "For all necessary future response costs incurred by Mission regarding the PCE plume, Mission is responsible for 50% of those future costs and the City is responsible for 50% of those future costs." Id. The Court also declared that the City was responsible for 100% of any necessary repair costs to the subject sewers. See id.

## PLAINTIFF'S MOTION

*Plaintiff's Arguments*

Mission argues that it has incurred DTSC required costs and expenses related to monitoring and remedial planning efforts. Since trial, the City has engaged in efforts to avoid paying its fair share by manufacturing hurdles that have no bearing on the February Order. The City has made it clear that it intends each step to be difficult, when it should be straightforward. This necessitates the issuance of a three-pronged supplemental order from the Court.

First, Mission argues that the Court should order the City to pay its share of the $39,672.26 in response costs, as ordered and overseen by the DTSC. This includes $6,859.96 in DTSC costs that were billed directly to and paid by Mission. The remaining $32,812.57 is for work that DTSC found acceptable and which DTSC used as the basis for ordering Mission to perform a pilot study. Under the judgment, the City owes $19,836.13, but refuses to pay anything. Further, The City has indicated that all the costs are invalid because they do not conform to state law and the City's bidding procedures for public projects.

Second, Mission requests that the Court order Mission to complete the sewer repair work before completion of the pilot study or explain why the work cannot be completed on time. Mission argues that the City refuses to provide it with information regarding the City's sewer repair work or schedules. Although the City has provided a conceptual plan, there is no clear schedule. Mission has sought information about sewer repairs because it is necessary to be completed before final remediation can begin. Without the City proactively completing repair work, the cleanup will be further delayed.

Third, Mission argues that the City should be ordered to pay its share of the pilot study and further remediation costs. Mission has engaged in discussions with the City about cleanup efforts and invited the City to comment on and participate in the current bid process for remedial proposals and cost estimates. However, the City has not confirmed that it will pay any part of the upcoming pilot study and remedial planning work. Because the City is unwilling to pay its share of the $39,672.26 and is refusing to commit about the costs of the remediation study, a court order is necessary.

*Defendant's Opposition*

The City argues that none of the three orders requested by Mission is necessary to give effect to the judgment. The first requested order is unnecessary because the February Order did not require the payment of money, rather, it allocated responsibility for payments subject to a future action. The City argues that it is not refusing to pay those amounts, but instead is seeking a declaration from the California Superior Court regarding whether the public moneys to be used for this apparent public works project should be subject to the public bidding rules of the California Public Contracts Code and City Charter. That state action arises from Mission's stated intention to move forward with a pilot project using public funds, as well as Mission's intention to force City to pay 50% of the costs in consultant's work from the time of trial through June 2019. However, because the City has determined that the administrative invoices from the DTSC are not subject to public bidding procedures, the City states that it will pay 50% of those fees.

The City argues that the second requested order is improper because the City is performing the sewer repair work. The City explains that it is accepting bids and should award a contract by

1 late February 2020.  The public bidding process is required by law, but once the bidding is
2 complete, a contract will be awarded and the project will be completed

3       Finally, the City argues that that third requested order is unnecessary.  The request is little
4 more than a restatement that the City is responsible for 50% of the pilot study, which is what the
5 February Order already says.

6     *Discussion*

7     1.    <u>Monetary Award</u>

8         a.    <u>Basis for a Monetary Award</u>

9       The City contends that Mission's request for a monetary award is outside the scope of the
10 February Order, which the Court views as an argument that the February Order cannot serve as the
11 basis for a monetary award.

12       The City is correct that the February Order did not make any monetary awards.  The
13 February Order made findings of fact and conclusions of law regarding the nature and cause of the
14 PCE plume and the elements of a 42 U.S.C. § 9607 ("§ 9607") cost recovery claim.  The Court
15 then issued declaratory relief under 42 U.S.C. § 9613(g)(2) ("§ 9613(g)(2)).  As quoted above, the
16 Court declared, "For all necessary future response costs incurred by Mission regarding the PCE
17 plume, Mission is responsible for 50% of those future costs and the City is responsible for 50% of
18 those future costs."  This declaration "is binding on any subsequent action or actions to recover
19 further response costs or damages." 42 U.S.C. § 9613(g)(2).  It is intended to ensure that "the
20 responsible party will have continuing liability for the cost of finishing the job."  <u>In re Dant &</u>
21 <u>Russell, Inc.</u>, 951 F.2d 246, 249-50 (9th Cir. 1991).

22       Where a § 9607 judgment includes a declaration for liability for further necessary response
23 costs, some courts have viewed motions to enforce the declaratory judgment as a "subsequent
24 action to recover further response costs" pursuant to § 9613(g)(2).  <u>See</u> <u>United States v. Wash.</u>
25 <u>State Dept. of Transp.</u>, 2014 U.S. Dist. LEXIS 85971, *1-*2 (W.D. Wash. June 23, 2014).  Under
26 *Washington State*'s treatment of a motion to enforce, Mission's motion to enforce judgment is
27 consistent with the February Order as a § 9613(g)(2) "subsequent action."  <u>See id.</u>

28       In the context of CERCLA contribution claims under 42 U.S.C. § 9613(f) ("§ 9613(f)"),

4

courts have found that declaratory relief that sets the percentage of liability for future cleanup expenses may be issued pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), despite CERCLA only expressly providing for declaratory relief in § 9613(g)(2) for successful § 9607 claims.  See New York v. Solvent Chem. Co., 664 F.3d 22, 27 (2d Cir. 2011); Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1191 (9th Cir. 2000).  This is so because environmental litigation is tremendously complex, lengthy, and expensive, and relitigating liability issues would be wasteful.  Solvent Chem., 664 F.3d at 27; Boeing, 207 F.3d at 1191.  Declaratory relief allocating future costs saves the time and costs that would be expended in relitigating liability and is consistent with the broader purposes of CERCLA, to encourage quick response and place the costs on the responsible parties.  See Solvent Chem., 664 F.3d at 27; Boeing, 207 F.3d at 1191.  Once declaratory relief in a § 9613(f) allocates future response costs, district courts may order further relief pursuant to 28 U.S.C. § 2202.  See Solvent Chem., 664 F.3d at 27; See Nikko Materials USA, Inc. v. NavCom Def. Elecs., Inc., 2010 U.S. Dist. LEXIS 148306, at *8 (C.D. Cal. May 2, 2010).  "Once the uncertainties regarding ongoing response costs have been resolved, a declaratory judgment allows the parties to invoke the jurisdiction of the district court pursuant to 28 U.S.C. § 2202 and obtain 'further relief' in the form of an order establishing the precise costs that each party will bear."  Solvent Chem., 664 F.3d at 27; see also Nikko Materials, 2010 U.S. Dist. LEXIS at 148306 at *8 (holding, in a case in which the plaintiff sought *inter alia* portion of certain cleanup costs in conjunction with a declaration that had set liability at a 60/40 "This CERCLA action presents the epitome of when § 2202 applies.  This is because it involves ongoing cleanup that is expected to generate response costs for approximately 30 years.").  Here, liability was set pursuant to § 9607, not § 9613(f).  However, the same concerns articulated by *Solvent Chemical*, *Boeing*, and *Nikko Materials* apply to declarations issued pursuant to § 9613(g)(2) in § 9607 cases.  A declaration under § 9613(g)(2) allows "the plaintiff to avoid costly and time-consuming relitigation of liability once it has been established."  City of Colton v. American Promotional Events, Inc.-West, 614 F.3d 998, 1008 (9th Cir. 2010).  Stated differently, declarations under § 9613(g)(2) are mean to insure that a responsible party's liability, once established, would not have to be relitigated . . . ."  Kelley v. E.I. DuPont de Nemours & Co., 17

F.3d 836, 844 (6th Cir. 1994). Given the identical rationales that underly declarations in § 9613(f) and § 9607 cases, the materially identical effect the declarations have of setting liability ratios for further cleanup efforts, and the CERCLA goals of ensuring responsible parties pay for timely cleanups, it is unclear why the rationale of *Solvent Chemical* and *Nikko Materials* that envision and permit supplemental orders regarding specific cleanup costs would not apply in this case.

Finally, the Ninth Circuit has recognized that, when declaratory relief is granted by a court, there are two sources that a court can invoke to grant supplemental relief, 28 U.S.C. § 2202 and the court's inherent power to give effect to its own judgments. Rincon Band of Mission Indians v. Harris, 618 F.2d 569, 575 (9th Cir. 1980). Here, pursuant to *Rincon Band of Mission Indians*, the Court has the inherent authority to give effect to the declaration that the City is responsible for 50% of the necessary future responses costs incurred by Mission. Giving effect to the declaration would entail adjudicating whether a particular expenditure was a necessary response cost, such that the City would or would not be required to pay 50% of the cost (per the February Order). Cf. Solvent Chem., 664 F.3d at 27; Chem. Leaman Tank Lines v. Aetna Cas. & Sur. Co., 177 F.3d 210, 221 (3d Cir. 1999) (noting that "a motion to recover amounts due in accordance with the declaration [allocating liability] would constitute supplementary relief.").

From the above, the Court concludes that it has the authority issue a supplemental monetary award that is consistent with and essentially enforces the February Order's declarations.

    b.  Amount of Monetary Award

The City does not dispute that Mission Linen has paid the DTSC $6,859.96 that was charged by DTSC for administrative costs relating to the PCE contaminated property. The City has also represented that it will pay half of this figure, or $3,429.98, to Mission. Mission's reply, however, indicates that it has not yet received that money. Given the representations of the parties, the Court will not issue an order requiring payment of the $3,429.98 at this time, but, because it is likely that the City has followed through on its representations and thereby mooted this aspect of Mission's requested relief, the Court will instead order the parties to submit supplemental information regarding the payment (if any) of the $3,429.98.

This leaves (for now) $32,812.57 of costs in dispute. The basis of the dispute is whether

the costs are invalid because the requirements of the California Public Contracts Code and/or the City Charter were not followed when the costs were incurred. Specifically, the Court understands the City to argue that the cleanup efforts of the property/PCE plume are "public works projects" for which public funds will be expended, which means that California and/or municipal public bidding laws and regulations must be followed before the public funds can be expended. The parties have not briefed this issue in detail. Before any monetary amount can be set, the Court needs additional briefing from the parties.[2] The parties will be ordered to file concurrent briefs and replies. The additional briefing shall be supported by citation to the relevant statutory provisions, case law, and any relevant secondary sources. Particularly instructive would be any authority that has applied the California Public Contracts Code (or similar statutory schemes) to a CERCLA cleanup project. The Court reminds the parties that arguments that are based largely on the bare arguments of counsel are generally unpersuasive since they are essentially unsupported.

Additionally, the parties' briefing regarding the Court's ability to issue supplemental declarations or orders regarding the February Order was sparse. It amounted to an assertion that the February Order did not require the payment of any particular cost, with a reply that costs can be ordered as part of a "subsequent action." If the parties wish to present any authority that is contrary to the Court's above analysis, they may do so as part of the supplemental briefing.

2. <u>Sewer Repair Efforts</u>

The February Order recognized that the "subject sewers," i.e. the pipes and mains around the property, were rife with defects that permit PCE and other hazardous materials be released into the environment, affecting at least soil, soil gas, and groundwater. See Doc. No. 176 at pp. 12, 15,

---

[2] In a related case, *City of Visalia v. Mission Linen*, 1:19-cv-1809 AWI EPG, the issue has been raised and briefed in connection with a motion to dismiss by Mission. However, none of that briefing has been sufficiently relied upon in this case. The *City of Visalia* case is a declaratory judgment suit that was removed from the Tulare County Superior Court. The sole issue for "declaration" in the *City of Visalia* matter is whether the California Public Contracts Code and/or the City Charter apply to work to be completed in the process of cleaning up the PCE plume. Currently pending in the *City of Visalia* case, in addition to the motion to dismiss, is a motion to remand. Depending on the resolution of the motion to remand, the Court may not address the motion to dismiss. Because the issue of the applicability of the Public Contracts Code/City Charter with respect to remediation of the property is now before the Court in the case at bar, the Court finds that it is appropriate for additional briefing to be received and filed in the docket of this case. While the parties may incorporate some or all of the briefing made in connection with the motion to dismiss in the *City of Visalia* case, the parties should include additional arguments and authorities in the supplemental briefing.

1    16, 31.  The February Order also found (as conceded jointly by the parties) that the PCE plume is
2    abatable.  See id. at p.16.  However, while the Court found that soil vapor extraction and air
3    sparging appeared to be viable methods of remediating the PCE plume, leakage from the subject
4    sewers is an impediment to the soil vapor extraction method.  See id.   Therefore, the subject
5    sewers should be repaired before the soil vapor method is attempted or implemented.  See id.
6    When combined with the declaration that the City is 100% responsible for any necessary repairs to
7    the subject sewers, it is reasonably clear that repairs to the subject sewer will be part of the clean
8    up effort of the property/PCE plume.

9          The City represents that it is not attempting to avoid repairing the subject sewers or to get
10   around the February Order.  The City states that it has requested bids on the repair project and
11   hoped to have awarded a contract by late February 2020, and that the bid-process is required by
12   law and necessary to ensure that the project is performed safely and efficiently.  However,
13   Mission's reply indicates that this is the first time that it has heard about bids and contract plans.
14   No further information has been provided to the Court regarding either the parties'
15   communications concerning the award of any contract, any repair schedules, or the progress of any
16   repair work that has begun.

17         The briefing suggests that the parties appear to understand the condition of the subject
18   sewers, as well as the need for repair work to be completed as part of the effective remediation of
19   the property.  Given this understanding, it is extremely disappointing to the Court that it is now
20   forced to address this issue.  The uncontradicted expert testimony in this case was that air sparging
21   and soil vapor extraction should be able to work in tandem to remediate the property, but that the
22   condition of the subject sewers was an impediment to remediation.  Given the testimony, it is
23   completely understandable that Mission would like to be informed of progress that the City is
24   making towards repairs.  Such information would naturally have an effect on the projects that can
25   be scheduled and on responses that Mission is obligated to make to DTSC.  It is also completely
26   understandable that the City wants to follow through on state and municipal bidding procedures,
27   and to ensure that its sewers are repaired competently, safely, and efficiently.

28         At this time, the Court will not order any particular type of repair schedule or

communications between the parties regarding sewer repair. However, the need for regular good faith communication between the parties regarding repairs to the subject sewers is obvious. As part of the supplemental briefing ordered above, the parties will be directed to meet and confer regarding the status of the sewer repair work/process, as well as mutual communication efforts concerning the sewer repair work. During trial, counsel were able to cordially and professionally present their respective cases. It is unclear why counsel cannot now find a way to communicate about repair progress and tentative repair schedules so that the concerns and objective of both sides can be reasonably accommodated. If the parties are able to reach an amicable resolution regarding "sewer repair progress and communication," their supplemental briefing will state that the issue has been resolved. If no resolution can be reached, the parties shall submit additional information for the Court to consider in determining whether to issue a supplemental order and, if so, what kind of order to issue.

   3. <u>Costs of Pilot Study and Other Remediation Expenses</u>

As the Court understands Mission's motion, the pilot study of the property that has been ordered by the DTSC has yet to occur. Therefore, it can be assumed that no costs, necessary or not, have been incurred.

The February Order recognizes that DTSC and Mission entered into a consent order, meaning that DTSC looks to Mission to clean up the property. Because DTSC is obligating Mission to clean up the property, the Court declared that the City was liable for 50% of further necessary response costs incurred by Mission. Once Mission incurs a "necessary further response cost," it may request that the City voluntarily pay its 50% share. If the City refuses, then, per § 9613(g)(2), Mission can attempt to recover the City's 50% share through a "subsequent action." In the "subsequent action," Mission may demonstrate that it has incurred a necessary further response cost, and the City may voice whatever objections or defenses that it may have to that cost. A further order, either granting, denying, or granting in part the request for 50% of the costs can then be made.[3]

---

[3] The Court is not suggesting that this is the only mechanism for the City to pay for 50% of further necessary response costs. Any agreement or procedure that the parties can reach among the themselves, without the need for further judicial involvement, is welcomed.

At this time, the Court cannot hold that the City's refusal to acknowledge a proposed cost or objections to any response cost that has yet to be incurred sufficiently affects the Court's February Order. Until a "necessary further response cost" has actually been incurred, and the City has refused to pay its 50% share, no order for the City to pay need be made. Therefore, until the evidence demonstrates that the City has refused to pay an incurred "necessary further response cost," including costs relating to the pilot study, the Court will not issue an order for the City to pay. The February Order already obligates the City to pay 50% of necessary further response costs.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to enforce judgment is DENIED with respect to third requested supplemental order regarding payments relating to the pilot study and other costs;
2. Within twenty-one days from service of this order, the parties shall submit additional briefing, as described above;
3. Within fourteen days from service of the supplemental briefing, the parties shall file replies; and
4. Once the Court has received the additional briefing, it will either set a hearing date (if the Court determines that would be helpful) or issue a further order that resolves the two outstanding aspects of Plaintiff's motion to enforce judgment.

IT IS SO ORDERED.

Dated:   May 12, 2020                                   _____
                                                                    SENIOR DISTRICT JUDGE